ORDER
PER CURIAM:
On April 14, 2009, more than 120 days after the November 5, 2008, Board of Veterans’ Appeals (Board) decision that denied benefits for his bilateral lower extremity peripheral neuropathy, veteran William Rickett filed pro se a Notice of Appeal (NOA) with the Court. See 38 U.S.C. § 7266(a) (NOA must be filed within 120 days of Board decision). Prior to April 14, however, and within the 120-day period to file an NOA, Mr. Rickett had mailed a letter to an office (022D) within the VA Office of General Counsel (OGC), expressing an intent to appeal to the “Courts.” Preliminary Record (PR) at 1. As further discussed below, because Mr. Rickett mailed his letter to OGC (022D) within the 120-day appeal period, his letter reflected an intent to seek review at the Court, and he promptly filed an NOA with the Court upon learning that he had misfiled, equitable tolling of the 120-day appeal period is warranted, and his appeal will be accepted.
I. BACKGROUND[2]
On November 5, 2008, the Board mailed to Mr. Rickett its decision and a standard Notice of Appellate Rights (NAR). As reflected by a U.S. Postal Service (USPS) postmark, on January 8, 2009, Mr. Rickett mailed to the “Office of General Counsel (022D)” a document that states:
Refer to (014A4)
William C. Rickett
[Social Security Number]
This is to inform you that I wish to appeal this to the Courts
Thank you
[signed William C. Rickett]
PR at 1-3. The document reflects a VA date stamp of January 26, 2009, and at some point it was forwarded to the VA regional office (RO) in Waco, Texas, which received the document on February 19, 2009. See PR at 3. The RO stamped it “appeals” and placed it in a locked cabinet where Board decision files are held — to maintain their integrity pending possible appeal — for 150 days following a Board decision. PR at 1; see also April 26, 2012, Oral Argument Transcript at 33:30. On March 6, 2009, the 120-day period to file an appeal expired. See 38 U.S.C. § 7266(a). Upon receiving no response with regard to his appeal, on April 14, 2009, Mr. Rickett contacted the Court and recognized his error in sending his intent *214 to appeal to OGC (022D). That day, he also mailed an NOA to the Court, attached a copy of his letter to OGC (022D), and explained his error. On July 28, 2009, the Secretary filed a motion to dismiss for untimely filing.
At the time Mr. Rickett filed his NOA with the Court, equitable tolling of the time to file an NOA was deemed legally impermissible, and Mr. Rickett’s appeal was dismissed for lack of jurisdiction. See Rickett v. Shinseki, 23 Vet.App. 366, 368-71 (2010) (relying on Henderson v. Peake, 22 Vet.App. 217 (2008), and Henderson v. Shinseki, 589 F.3d 1201 (Fed.Cir.2009) (Henderson I and II, respectively)). Mr. Rickett appealed to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). While his appeal was pending decision by the Federal Circuit, Henderson II was overturned by the U.S. Supreme Court in Henderson v. Shinseki, — U.S. -, 131 S.Ct. 1197, 1206, 179 L.Ed.2d 159 (2011) (Henderson III), which found that the 120-day period to file an appeal to this Court under section 7266(a), although an “important procedural rule,” was not jurisdictional. Based on Henderson III, the Federal Circuit vacated the Court’s Rick-ett decision and remanded the case for further adjudication. See Rickett v. Shinseki, 421 Fed.Appx. 967 (Fed.Cir.2011).
Following Henderson III, this Court held in a panel decision that, “subject to revision, pursuant to the Court’s rule-making authority,” the 120-day period to file an NOA is subject to equitable tolling within the parameters established by the precedents of the Federal Circuit and this Court prior to Henderson I. See Bove v. Shinseki, 25 Vet.App. 136, 140 (2011) (per curiam order). One such precedential decision is Reed v. Principi, 17 Vet.App. 380, 383 (2003). Reed held that an NOA addressed to and filed with the OGC after the 120-day appeal period (1) could not be accepted as timely under the statutory postmark filing rule, id. (noting that 38 U.S.C. § 7266(c) applies to NOAs “properly addressed to the Court”), and (2) did not warrant equitable tolling because, inter alia, claimants are unfamiliar with the VA OGC. 17 Vet.App. at 385.
However, later Federal Circuit precedents — namely, Brandenburg v. Principi, 371 F.3d 1362 (Fed.Cir.2004) (NOA misfiled at Board), and Bailey (Edward) v. Principi, 351 F.3d 1381 (Fed.Cir.2003) (NOA misfiled at RO) — focused on factors other than familiarity with the place of filing in them equitable tolling analyses. In light of these later precedents, as well as the fact that the 120-day appeal period is an important procedural rule, Henderson III at 1206, en banc review is warranted to assess the continued viability of Reed and the application of equitable tolling when an NOA is filed within the 120-day appeal period, but at a location other than the Court.
II. ANALYSIS
A. Caselaw Regarding Equitable Tolling in Cases of Timely Misfilings
Our analysis begins with this Court’s and the Federal Circuit’s equitable tolling caselaw as applied in varying circumstances over time. Section 7266(a) states that a claimant “shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed” to the claimant. The 120-day period initially was viewed as a jurisdictional barrier to the exercise of this Court’s authority to review Board decisions. See Butler v. Derwinski, 960 F.2d 139, 140-41 (Fed.Cir.1992); Cleary v. Brown, 8 Vet.App. 305, 307 (1995). The Federal Circuit in Bailey (Harold) v. West, 160 F.3d 1360 (Fed.Cir.1998) (en banc), subsequently held that the 120-day period could be equitably tolled in cases where “ ‘the claimant *215 has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary’s misconduct into allowing the filing deadline to pass.’ “ Id. at 1364 (quoting Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (footnotes omitted)).
Although Bailey (Harold) involved the untimely filing of an NO A due to the misleading conduct of an adversary (the Secretary), the Federal Circuit’s subsequent caselaw on equitable tolling primarily has addressed the other prong of equitable tolling recognized by Bailey (Harold), to wit: the timely filing of a defective pleading. The first pertinent holding is found in Jaquay v. Principi, 304 F.3d 1276 (Fed.Cir.2002), which involved the interplay between the filing of a motion for Board Chairman reconsideration, and this Court’s decision in Rosler v. Derwinski, 1 Vet.App. 241, 249 (1991), which held that the finality of a Board decision was abated upon the filing of a motion for Board Chairman reconsideration if the motion was filed within the 120-day appeal period, such that a new 120-day period would begin when and if the motion for reconsideration by the Board Chairman was denied.
The appellant in Jaquay filed a motion for Board Chairman reconsideration of a Board decision within the 120-day appeal period, but he filed it with the RO that had processed his claim instead of with the Board Chairman, as required by VA regulation. 304 F.3d at 1279. About 10 months later, the RO forwarded the motion to the Board Chairman, who denied it. Id. Within 120 days of that denial, the appellant filed his NOA with the Court, which rejected it as untimely filed because the motion for reconsideration by the Board Chairman had not been filed with the Board Chairman within the 120-day period. Id. at 1279-80. The Federal Circuit held that the filing of a motion for reconsideration by the Board Chairman within the 120-day appeal period — as needed to effectuate a Rosier abatement— did not require strict compliance with VA regulations on where to file such a motion for reconsideration; therefore, filing the motion with the RO effectuated a Rosier abatement. Id. at 1288-89.
In support of its holding in Jaquay, the Federal Circuit noted that (1) the due diligence requirement for equitable tolling is more relaxed when a pro se claimant timely misfiles a pleading, (2) the veteran-friendly nature of proceedings before VA, during the “non-adversarial stage of a claim for benefits,” counseled construing due diligence in favor of the claimant, (3) the misfiling at the RO from which the claim originated showed that the claimant actively sought redress of the Secretary’s action and did not constitute a garden variety claim of excusable neglect, (4) the misfiling with the RO was the claimant’s only misstep in filing his motion for reconsideration by the Board Chairman, and (5) internal VA policies governed the forwarding or return of misdirected mail. Id. at 1287; see id. at 1288 (citing provision of the VA Adjudication Procedures Manual M21-1 that is now located at M21-1MR, pt. II, ch. 5, sec. 3).
In this context — the misfiling within the 120-day appeal period of a motion for reconsideration by the Board Chairman at the RO from which the claim originated— the Federal Circuit further noted that the postmisfiling actions by the claimant were not for consideration in the equitable tolling assessment; rather, the timely misfiling at the RO from which the claim originated satisfied, as a matter of law, the due diligence requirement for equitably tolling the time to file a motion for reconsideration by the Board Chairman for purposes *216 of a Rosier abatement. Id. at 1288-89. The Federal Circuit also explicitly noted that there was no dispute that Mr. Jaquay filed his NOA at the Court within 120 days of the Board Chairman’s denial of the motion for reconsideration, such that, per Rosier, the NOA was timely filed with the Court. Id.
Unlike Jaquay, subsequent decisions by the Federal Circuit on equitable tolling did not involve the misfiling of an administrative motion for reconsideration by the Board Chairman and a Rosier abatement of the 120-day appeal period. Santana-Venegas v. Principi, 314 F.3d 1293, 1295 (Fed.Cir.2002), involved an NOA that was timely, yet misfiled at the RO from which the claim originated. Twenty days after the 120-day period expired, the RO informed the appellant that he had to file his NOA with the Court, and the appellant thereafter filed his NOA with the Court 21 days later. A single judge order of this Court dismissed his appeal as untimely. Id. at 1295-96. In reversing, the Federal Circuit, inter alia, (1) reiterated that the due diligence requirement for equitable tolling was more relaxed when a pro se, prospective appellant timely misfiled a pleading, (2) again noted that internal VA policies governed the forwarding or return of misdirected mail, (3) held that a prospective appellant’s misfiling of an NOA with the RO from which the claim originated showed an intent to seek redress of the Secretary’s action and was not a garden variety claim of excusable neglect, and (4) further held, as a matter of law, that the misfiling of an NOA at the RO from which the claim originated constituted due diligence. Of note, the Federal Circuit’s decision is devoid of any implication or charge that the appellant had not filed with the Court promptly after learning he had misfiled his NOA.
Following Jaquay and Santanar-Vene-gas, this Court was faced with a situation in Reed that involved a prospective appellant who mailed his NOA to “General Counsel (027)” approximately one month before the expiration of the 120-day appeal period, although (apparently as a result of mailing delays related to an anthrax scare) it was not received by the OGC until 9 days after the appeal period had expired, and was not forwarded by OGC and received by the Court for another 4 days.[3] 17 Vet.App. at 381. The Court acknowledged that equitable tolling was permitted for NOA misfilings at the RO within the 120-day appeal period pursuant to Santa-nar-Venegas, but held that Mr. Reed’s filing of an NOA at the OGC did not warrant similar treatment. The Court based that distinction on essentially four factors: (1) The OGC — unlike the RO — was an office “with which [the prospective appellant] had no familiarity,” (2) prospective appellants filing NO As have moved from the nonadversarial VA administrative system to a Federal court with adversarial process, (3) the OGC had acted promptly in forwarding Mr. Reed’s NOA to the Court, and (4) Mr. Reed was warned in the NAR that filing with the OGC would not protect the right to appeal to the Court. 17 Vet.App. at 385.
Reed was not appealed, but, three days after Reed was issued, the Federal Circuit provided additional guidance on key criteria for applying equitable tolling in cases involving timely misfiled NOAs. See Bailey (Edward), 351 F.3d at 1385. The appellant in Bailey (Edward), through his state veterans service representative, *217 mailed his NOA[4] to the RO from which his claim originated within the 120-day appeal period. Id. at 1388. After receiving no response from the RO for almost six months, the appellant submitted an NOA to the Court. Id. Although a single judge decision of this Court found that the appellant — by using the wrong form and sending it to the wrong location — had not exercised due diligence to warrant equitable tolling, the Federal Circuit again found that filing the NOA with the RO from which the claim originated satisfied the due diligence requirement as a matter of law. Id. at 1385. More specifically, the Federal Circuit found the errors in form and location of filing inapposite, stating that
[a]s long as the veteran’s intention is clear and [VA] is put on notice of his intention to seek further review of his claim, an error in the form or in the office to which it is sent, or both, is not sufficient to render the filing ineligible for consideration under the equitable tolling doctrine.
Id. Thus, rather than the factors found significant in Reed, the Federal Circuit emphasized in its analysis: (1) Due diligence; (2) the prospective appellant’s intention to appeal; and (3) VA’s being put on notice of that intent to appeal. Moreover, he filed his NOA at the Court promptly after inquiring as to the status of his appeal at the Court. Bailey (Edward) v. Principi, No. 01-1116, 2002 WL 1269893, at *1 (Vet.App. May 31, 2002) (mem. dec.).
Shortly thereafter, the Federal Circuit in Brandenburg again instructed that “the focus [of equitable tolling analysis is] whether the veteran exercised due diligence in preserving his legal rights, and whether the veteran’s intention is clear and [VA] is put on notice of his intention to seek further review of his claim.” 371 F.3d at 1364 (internal quotation marks omitted). Brandenburg involved an appellant who filed his NOA at the Board near the end of the 120-day appeal period. Id. at 1363. The RO promptly notified Mr. Brandenburg that he should have filed his NOA with the Court, and Mr. Brandenburg filed an NOA with the Court about three months after such notification. Id.
In Brandenburg, a single judge decision of this Court held that equitable tolling was unwarranted under Santana-Venegas because the appellant filed his NOA at the Board, rather than the RO from which the claim originated. Id. Applying the principles enunciated in Bailey (Edward), however, the Federal Circuit found that “there is no meaningful difference between the [RO] and the [B]oard,” and held that equitable tolling “may apply when an appellant timely misfiles [an NOA] with the Board.” Id. at 1364. Of note, the Federal Circuit specifically recognized that past cases involved misfilings at the RO from which the claim originated, but further noted that “whether equitable tolling applied in each case did not hinge on that particularity.” Id. Also significant is the fact that the Federal Circuit’s decision contained no implication or charge that the three-month period between Mr. Brandenburg being notified by the RO of the proper location to file his NOA and his subsequent filing at the Court reflected a lack of due diligence in pursuing his judicial remedy.
Thereafter, in Hunt v. Nicholson, this Court recognized that the Federal Circuit, in effect, had established three criteria for equitable tolling in misfiling cases:
*218 It is clear from the law developed by the Federal Circuit that in cases involving an appellant who misfiles his NOA at a place other than this Court, three criteria must be satisfied before equitable tolling may be allowed: (1) the claimant must have exercised due diligence in pursuing his legal rights; (2) the misfiled document must reveal a clear intention by the claimant to seek further review; and (3) the misfiled document must put VA on notice of the claimant’s intention.
20 Vet.App. 519, 524 (2006).
Read together, Santana-Venegas, Bailey (Edward), Brandenburg, and Hunt stand for the proposition that equitable tolling is predicated primarily on the due diligence of the prospective appellant as opposed to the particularity of the location at which the prospective appellant misfiles his or her NOA and that the due diligence requirement is relaxed in cases of timely misfilings by pro se, prospective appellants. Thus, to the extent that Reed stands for the proposition that equitable tolling based on a misfiled NOA applies only when the misfiling is at the RO that processed the claim or at the Board, or that timely misfilings at the OGC are not subject to equitable tolling per se, such holdings are overturned, consistent with the Federal Circuit precedents cited above. See Patterson v. McLean Credit Union, 491 U.S. 164, 173, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (where the “growth of judicial doctrine” has “removed or weakened' the conceptual underpinnings from the prior decision ..., the Court has not hesitated to overrule an earlier decision”); Bethea v. Derwinski, 2 Vet.App. 252, 254 (1992) (panel decisions constitute binding precedent unless overturned by, inter alia, the full Court or the Federal Circuit). Further, to the extent Reed considered the promptness of Agency action in informing the prospective appellant of the misfiling as a factor that weighed against equitable tolling, we further hold that this factor has no bearing against an individual’s due diligence.
B. The Criteria for Equitable Tolling in Cases of Timely Misfilings
The Court’s summation in Hunt of the Federal Circuit’s criteria for assessing whether equitable tolling is warranted in the case of a timely misfiling remains intact, but requires further eláboration in light of our holding today that Reed has been overtaken by Federal Circuit case-law. Moreover, although not included in Hunt’s enumerated list of criteria for equitable tolling, a timely misfiling is a necessary criterion in application of the test recognized by the Court in Hunt. Thus, the Court is required to address each of these four criteria when assessing whether equitable tolling is warranted in such a situation.

1. Timely Misfiling

Although not a focus of the above-cited Federal Circuit cases addressing equitable tolling, a necessary factual predicate in all those cases — except Jaquay, which involved an administrative motion for reconsideration by the Board Chairman — was the filing of a purported NOA at a location other than the Court within the 120-day judicial appeal period. See Brandenburg, Bailey (Edward), and Santana-Venegas, all supra (all involving a misfiling within the 120-day period); see also Hunt, 20 Vet.App. at 524 (distilling from those Federal Circuit decisions the criteria for equitable tolling “in cases involving an appellant who misfiles his NOA at a place other than this Court”).
A prospective appellant must demonstrate with independent proof (i.e., evidence beyond his or her bare assertion) that the NOA was misfiled — i.e., filed at a location other than the Court — within the *219 120-day filing period. Fithian v. Shinseki, 24 Vet.App. 146, 151 (2010) (requiring independent proof of mailing to invoke a presumption of receipt under the common law mailbox rule or to rebut an established Agency presumption of regularity with respect to handling incoming mail). Indeed, to hold otherwise would create a lesser burden to establish timeliness for prospective appellants who misfile an NOA than the burden for those who deliver or mail an NOA to the Court. See, e.g., Rios v. Nicholson, 490 F.3d 928, 931-34 (Fed.Cir.2007) (recognizing that common law mailbox rule is for application), on remand at Rios v. Mansfield, 21 Vet.App. 481, 482 (2007) (outlining when common law mailbox rule is for application). We note that the date of a misfiling frequently will be established by a preliminary record or affidavit filed by the Secretary. See, e.g., Barrett v. Nicholson, 466 F.3d 1038, 1042-44 (Fed.Cir.2006).
Moreover, we further hold today that the rules that apply to determining whether an NOA filed in this Court is timely (i.e., date of receipt of an NOA or the date of the mailing as reflected by a USPS postmark, see 38 U.S.C. § 7266(c), or by application of the common law mailbox rule, see Rios v. Mansfield, supra) will be used to determine whether an NOA was timely misfiled at another location. In this regard, we overrule Reed’s holding that the statutory postmark rule in section 7266(c) does not apply to an NOA that was misfiled at another location. See Reed, 17 Vet.App. at 383.

2. Intent To Appeal

A prospective appellant’s intent in filing a document can be discerned from the form and content of the purported NOA and the circumstances surrounding the filing of that document. See Fithian, 24 Vet.App. at 157 (“The Court ... does have the authority, in determining whether a timely NOA has been filed, to also determine whether a document is a motion for reconsideration.”); Kouvaris v. Shinseki, 22 Vet.App. 377, 379 (2009) (examining “ ‘the document as a whole and the circumstances of its filing1 ” to discern whether a document was intended to be an NOA (quoting Durr v. Nicholson, 400 F.3d 1375, 1381 (Fed.Cir.2005))). The Court’s Rules of Practice and Procedure provide, in pertinent part, that an NOA
(1) should show the name, address, and telephone number of the person or persons making the appeal, and the appropriate [VA] claims file number; [and]
(2) shall reasonably identify the Board decision appealed from and be capable of being reasonably construed, on its face or from the surrounding circumstances, as expressing an intent to seek Court review of that decision[.]
U.S. Vet.App. R. 3(c). These requirements, however, have not been strictly construed, so that an individual’s failure to include his or her telephone number, for example, does not necessarily prove fatal. See Kouvaris, 22 Vet.App. at 379.
The requirement that an NOA reflect a clear intent to appeal to the Court is particularly important because a claimant for VA benefits has several options when the Board denies the benefit sought—e.g., a motion for reconsideration by the Board Chairman, a request to reopen, or an appeal to the Court—such that the filing of the document at VA itself can connote a lack of intent to seek judicial review if the document does not reveal a clear intention by the individual to seek further review at the Court. See Brandenburg, 371 F.3d at 1364; Bailey (Edward), 351 F.3d at 1385; Boone v. Shinseki, 22 Vet-App. 412, 414 (2009) (examining the “circumstances surrounding its filing” to determine whether a docu *220 ment is an NOA or otherwise). Nevertheless, use of the Court’s NOA form or any specific language is not required, and any filing must be construed liberally in the context of its language and circumstances of filing. See Posey v. Shinseki, 23 Vet.App. 406, 408 (2010); Kouvaris, 22 Vet.App. at 379 (noting that “the failure to explicitly ask for judicial review, or state that one is appealing, does not necessarily mean that a document filed with the Court will not be considered an NOA”); id. at 380 (finding that document filed at the Board, even liberally read, was not a misfiled NOA).

3. Notice to VA of Intent To Appeal

The purported NOA must also place the Secretary on notice of the individual’s intent to seek further review of his or her claim. See Brandenburg, Bailey (Edward), and Hunt, all supra. The Court’s consideration of this criterion, like the issue of whether an individual intended to appeal an adverse Board decision, requires a factual determination based on a liberal reading of the misfiled document, as well as consideration of the circumstances surrounding its filing. See Boone, supra.

h. The Relaxed Due Diligence Requirement

In Brandenburg, the Federal Circuit made clear that “the focus [of an equitable tolling analysis is] whether the veteran exercised due diligence in preserving his legal rights,” 371 F.3d at 1364 (internal quotation marks omitted), and, in Santana-Venegas and Jaguay, the Federal Circuit indicated that the due diligence requirement for a pro se appellant who timely misfiles is “relaxed,” 314 F.3d at 1297, 304 F.3d at 1287. As discussed below, we hold that the due diligence assessment in timely misfiling cases is based on a totality of circumstances. Although the Court will not now endeavor to provide an exhaustive list of factors to consider in a due diligence analysis, we will elaborate on two such factors that are particularly relevant in cases of timely misfiled NOAs and that come into play in Mr. Rickett’s case: The location of the misfiling and any corrective actions that the prospective appellant takes after learning of the misfiling.

a. Location of Misfiling

The Federal Circuit clearly has held that a prospective appellant exercises due diligence as a matter of law at the point in time when he or she files an NOA within the 120-day appeal period at the RO from which the claim originated or the Board. However, there is little guidance from the Federal Circuit as to when a misfiling at another location might reflect due diligence. Although familiarity with the particular location where the NOA was misfiled is not a determinative or required factor when assessing whether a misfiling is eligible for equitable tolling, see Bailey (Edward), 351 F.3d at 1385, we believe the prospective, pro se appellant nevertheless must demonstrate a reasonable basis for the misfiling. The Federal Circuit noted in Brandenburg that there was “no meaningful difference between the [RO] and the [B]oard” for purposes of evaluating a prospective appellant’s diligence. 371 F.3d at 1364. In certain circumstances, there may be misfilings of an NOA at other VA offices that might reflect due diligence. As such, the reasonableness assessment will consider the prospective appellant’s reasons for believing that such a location might be appropriate for obtaining judicial review or filing an appeal of a decision on veterans benefits. We address below whether the filing in this instance at the “Office of General Counsel (022D)” reflects relaxed due diligence on the part of Mr. Rickett.

*221
b. Actions Taken After Learning of Misfiling

The Federal Circuit has not discussed what actions taken by a prospective appellant after learning that he or she misfiled an NOA at the wrong location constitute due diligence. Although the Federal Circuit noted in Jaguay that Mr. Jaquay’s actions after the misfiling were not for consideration in the equitable tolling assessment of that case, Jaguay involved (1) a misfiling — at the RO instead of the Board — of a motion for reconsideration by the Board Chairman, during the administrative and nonadversarial portion of the VA benefits adjudication process, and (2) the question whether such a misfiling would abate the finality of the Board decision for purposes of appealing to the Court per Rosier. 304 F.3d at 1288. Specifically, Jaguay did not involve the misfiling of an NOA. Indeed, actions taken after learning of a misfiling are relevant in the context of NOAs because Congress has provided that the Court may not hear an appeal unless an NOA is filed with the Court. See 38 U.S.C. § 7266(a) (NOA must be filed at the Court “to obtain review by the Court”). Although an NOA may — in circumstances outlined by statute — be deemed filed with the Court, the NOA must be either delivered to the Court or, if mailed, addressed to the Court. 38 U.S.C. § 7266(c) (NOA deemed received by the Court “if the [NOA] is delivered” to the Court or “if the [NOA] is properly addressed to the Court and is mailed” with a legible USPS postmark); see also U.S. Vet.App. R. 4(a); Rios, supra (common law mailbox rule applies). Thus, under the terms of the statute, receipt of an NOA by the Secretary does not constitute filing with the Court, which stands as an independent, judicial body, wholly separate from VA.
Within the administrative and nonadversarial portion of the VA benefits claims and appeal process, the Secretary has the duty to assist and has enacted policies with regard to forwarding misdirected mail within the Agency, such that there is no doubt that a VA RO, which adjudicates claims, has the duty to transfer a misfiled administrative motion for Board Chairman reconsideration to the proper VA office. See Jaguay, 304 F.3d at 1288 (citing misdirected mail policies in the M21-1, the then-existing VA Adjudication Procedures Manual)-, M21-1MR, pt. I, ch. 1, sec. 1.05 (ROs contain divisions that carry out the functions of the Veterans Benefits Administration); see also 38 U.S.C. § 5103A. Moreover, the doctrine of laches does not apply to a veteran’s failure to pursue his claim when the delay is caused by the Secretary’s failure to take required action, see Browder v. Derwinski, 1 Vet.App. 204, 208 (1991) (noting that “the VA benefits system, as well as the Veterans’ Judicial Review Act both militate against the application of the [laches] doctrine to cases before this Court”) (citing Manio v. Derwinski, 1 Vet.App. 140, 144 (1991)), such as the Board Chairman’s rendering of a decision on reconsideration, 38 U.S.C. § 7103. In the context of a motion for Board reconsideration, it is not surprising that the Federal Circuit deemed irrelevant Mr. Jaquay’s postmisfiling actions. The timely misfiling of the motion for reconsideration by the Board Chairman — an action internal to VA — at the RO where the claim originated instead of with the Board Chairman abates the finality of the Board decision for Rosier purposes, and the time to file an NOA with the Court does not begin anew until the Chairman denies the motion for reconsideration. As noted by the Federal Circuit, after he was notified that his motion was denied, Mr. Jaquay filed his NOA with the Court within the new 120-day appeal period.
*222 Unlike the timely misfiling of a motion for reconsideration by the Board Chairman — an internal matter within VA — the timely misfiling of an NOA with VA does not abate the finality of a Board decision, and the date of that misfiling is not the operative date for a filing at the Court because the NOA still must be filed at the Court for a judicial appeal to proceed. See 38 U.S.C. § 7266(a), (c); Rios, supra (common law mailbox rule applies). Otherwise stated, filing an NOA commences a judicial appeal and its adversarial process, an action decidedly not within VA. Indeed, VA is an executive branch agency and the Secretary is an adverse party in litigation before the Court, which exercises the judicial power of the United States. See Freytag v. Comm’r of Internal Revenue, 501 U.S. 868, 889, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (holding that Article I courts “exercise the judicial power of the United States”). Moreover, the availability of equitable tolling in cases of misfiled NOAs is not based on VA’s duty to assist or other internal VA policies, but on the due-diligent pursuit of judicial remedies by the prospective appellant. See Bailey (Harold), 160 F.3d at 1364.
Therefore, although a prospective appellant exercises due diligence as a matter of law at the point in time when he or she files an NOA within the 120-day appeal period at the RO from which the claim originated, the Board, or possibly other locations within VA, we believe that a prospective appellant’s actions taken after learning of the misfiling are factors in the “relaxed” due diligence assessment. This view is not inconsistent with Santanar-Venegas and Brandenburg; those decisions specifically noted the time between the appellant learning of the misfiling and the proper filing at the Court. See Santana-Venegas, 314 F.3d at 1295-96 (RO informed prospective appellant that he had misfiled his NOA, and he filed at the Court 21 days later); see also Brandenburg, 371 F.3d at 1363 (RO informed prospective appellant that he had misfiled his NOA, and he filed at the Court within 3 months). Significantly, those cases did not contain the explicit statement of Jaguay that post-misfiling actions were not relevant.[5]
Accordingly, we hold that the due diligence assessment, which is “relaxed” in cases of timely misfilings by pro se, prospective appellants, is based on the totality of the circumstances surrounding the misfiling and actions taken after learning of the misfiling, which culminate in the ultimate filing of an NOA with the Court— either because the Secretary forwarded a misfiled NOA to the Court, or because the prospective appellant subsequently filed an NOA with the Court. See 38 U.S.C. § 7266(a), (c); Rios, supra (common law mailbox rule applies).
Our holding today is made in the context of Federal Circuit precedents and in furtherance of our rulemaking authority. See 38 U.S.C. § 7264. As stated in Henderson III, 131 S.Ct. at 1206, the 120-day appeal *223 period is an “important procedural rule,” and equitably tolling this important rule cannot be based solely on a timely misfiling at any location outside the Court, possibly followed by inaction for many years after learning of the misfiling. To do so would subjugate the important rule that requires filing of a timely NOA with the Court to the control of others and give little meaning to the term “relaxed due diligence” and the requirement that prospective appellants diligently pursue judicial review to invoke equitable tolling. See Bove, 25 Vet.App. at 143 (“[I]t is the role of Congress and the Court ... to enforce or adjust the ‘important procedural rule’ prescribed by Congress in section 7266.”); see also In re Violation of Rule 28(c), 388 F.3d 1383, 1385 (Fed.Cir.2004) (“[I]n order to get its work done, [a court] must insist on strict compliance with its rules. Violations ... are all too frequent ..., impos[e] an unfair burden on opposing parties ..., [and] burden the court”). Accordingly, when an NOA is timely misfiled, we find it reasonable and prudent to hold that the due diligence assessment for equitable tolling of the time to file an NOA with the Court must be based on the totality of the circumstances, including whether there was a reasonable basis for the pro se, prospective appellant to file his or her NOA at a location other than the Court, and whether he or she showed the necessary relaxed due diligence after learning of such misfiling.
C. Application to Mr. Rickett’s Case

1. Timely Misfiling

There is no dispute, and the record reflects, that Mr. Rickett’s purported NOA was received by the “Office of General Counsel (022D)” on January 26, 2009, with more than 50 days remaining in the appeal period.

2. Intent To Appeal

Mr. Rickett’s purported NOA included what he believed was his VA claims file number and stated that he wanted to appeal “this to the Courts.” PR at 1. He included his full name, and the envelope in which the document was sent bore his mailing address. PR at 1, 3. Although the document was not filed at the Court, the circumstances surrounding Mr. Rickett’s submission — namely, his filing two months after an adverse Board decision and his invoking the words “appeal” and “Courts” — reflect an intent to appeal. See Boone, 22 Vet.App. at 414 (examining “the document and the circumstances surrounding its filing” to determine whether it was an NOA). Taken as a whole, Mr. Rickett’s January 2009 letter reveals a clear intention to seek further review at the Court and, therefore, the Court is satisfied that the document meets the content requirements of an NOA. See Bailey (Edward), 351 F.3d at 1385; see also Brandenburg, 371 F.3d at 1364. Compare Calma v. Brown, 9 Vet.App. 11, 15 (1996) (statement appealing Board Chairman’s denial of reconsideration held to be an NOA because prospective appellant’s intent clearly was “to pursue his claim to the next appropriate level in the system”), and Chadwick v. Derwinski, 1 Vet.App. 74, 76 (1990) (statement filed with Board held to be an NOA because “it requested review by the Court”), with Kouvaris, 22 Vet.App. at 380 (statement filed with Board not an NOA because “it lacked any indicia of intent to seek review by the Court”), and Boone, 22 Vet.App. at 414 (statement filed with RO not an NOA because it “evidenced no clear intent to seek judicial review”).
Although the Secretary argues that Mr. Rickett’s letter addressed to an office within OGC, specifically 022D, reflects no clear intent to appeal to the Court, the misfiled letter specifically noted an intent to “ap *224 peal this to the Courts.” PR at 1. When a prospective appellant’s letter reflects an intent to appeal to the courts, the location to which the letter was addressed is not determinative of whether the letter constitutes an NOA. See Chadwick, supra. Moreover, as to the Secretary’s suggestion that the terms “this” and “Courts” render the document ambiguous as to what decision Mr. Rickett was appealing and what court he was appealing to, such a technical reading ignores common sense, contravenes the Secretary’s duty to read pro se filings sympathetically, and is not supported by the OGC’s and RO’s actions. See Andrews v. Nicholson, 421 F.3d 1278, 1283 (Fed.Cir.2005); Kouvaris, 22 Vet.App. at 379; cf. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (complaints shall not be dismissed based on “‘time-consuming and justice-defeating technicalities’ ” (quoting Internatio-Rotterdam, Inc. v. Thomsen, 218 F.2d 514, 517 (Fed.Cir.1955))). The actions of the OGC in forwarding Mr. Rickett’s letter to the RO reflect an understanding that Mr. Rickett’s use of “this” referred to his claim for VA benefits, and the RO’s stamping of the document as “appeals” and placing it in a locked cabinet where files are held following a Board decision reflect an understanding that the document was an appeal following a Board decision. Moreover, the Secretary’s suggestion at oral argument that the professionals in Group II of the OGC, the section of OGC to which his envelope was addressed, may have been confused and thought that Mr. Rickett intended to appeal his claim to the Federal Circuit or some other court strains credulity.

3. Notice To VA of Intent to Appeal

Mr. Rickett’s letter also put the Secretary on notice of his intention within the 120-day period to file an appeal. See Bailey (Edward), 351 F.3d at 1385 (equitable tolling warranted where, inter alia, “[VA] is put on notice of [a prospective appellant’s] intention to seek further review of his claim”). To the extent the Secretary argues that the document’s receipt at OGC (022D) does not put “VA on notice,” his argument is not persuasive. Id. That document expressly states that Mr. Rickett wished to appeal to the courts, was associated readily with Mr. Rickett’s claim, and was forwarded to the RO where it was stamped “appeals.” We have no doubt that Mr. Rickett’s filing with OGC (022D) put the Secretary on notice of Mr. Rickett’s intent to seek review in this Court. See Fithian, supra; 38 C.F.R. § 14.500 (2012) (“Functions and Responsibilities of General Counsel”).
A Relaxed Due Diligence

a. Location of Misfiling

Mr. Rickett mailed his NOA to the “Office of General Counsel (022D),” which is an address on the NAR attached to the November 5, 2008, Board decision that was provided to Mr. Rickett by the Secretary. The NAR indicates that this address is for the office within VA, Professional Staff Group II (Group II), that, inter alia, handles fee agreements between appellants and attorneys or accredited agents for representation at the Court.[6] *225 Although the NAR notes that the OGC address is to be used for filing attorney fee agreements, Mr. Rickett asserts that the small print, multiple addresses, and overwhelming amount of information provided on the NAR confused him. While such an excuse likely would constitute “a garden variety claim of excusable neglect” if proffered by an attorney, Irwin, 498 U.S. at 96, 111 S.Ct. 458, the due diligence requirement for a pro se appellant’s timely misfiling is relaxed. See Santana-Venegas, 314 F.3d at 1297; Bazalo v. Brown, 9 Vet.App. 304, 310-11 (1996) (noting that counsel is held to a higher standard than pro se appellants in following rules and statutes), rev’d on other grounds, 150 F.3d 1380 (Fed.Cir.1998).
This Court previously found in Bobbitt v. Principi, 17 Vet.App. 547, 548 (2004), that equitable tolling applied where an NOA was timely misfiled at the Board notwithstanding the clear instructions on the NAR that “Filing a copy of your [NJotice of Appeal with the General Counsel, the Board, or any other VA office WILL NOT protect your right to appeal to the Court.” As we reasoned with regard to a misfiling at the Board in Bobbitt, we likewise find here that, despite the NAR, it is understandable that an appeal of a Board decision might be filed by a pro se, prospective appellant with OGC Group II (022D). The complete mailing address for OGC (022D) appears in bold type centered at the bottom of the last page of the NAR that Mr. Rickett received with the Board decision. In mailing his letter to this particular OGC group within VA, Mr. Rickett made some showing of a diligent effort, even erroneously, to follow the directions for filing an appeal.

b. Actions Taken After Learning of Misfiling

It is undisputed that Mr. Rickett (1) contacted the Court as to the status of his appeal approximately one month after the 120-day appeal period expired, and (2) filed a new NOA with the Court promptly upon learning his mistake in mailing his original NOA to the OGC.[7] Accordingly, we conclude that his actions taken after learning of the misfiling reflect “relaxed” due diligence that culminated in the ultimate filing of an NOA with the Court.
III. CONCLUSION
In conclusion, we find that — under the totality of the circumstances — Mr. Rick-ett’s letter of January 8, 2009, which was misfiled with the OGC within the 120-day judicial appeal period, adequately expressed his intent to appeal his adverse Board decision and put VA on notice of that intent. We also find that Mr. Rick-ett’s prompt action in filing his NOA with the Court after learning of the misfiling constitutes “relaxed” due diligence. Thus, equitable tolling of the 120-day appeal period is warranted, and his appeal is accepted.
Accordingly, it is
ORDERED that the Secretary’s July 28, 2009, motion to dismiss the appeal is denied. It is further
*226 ORDERED that the Secretary, not later than 30 days after the date of this order, file a notice certifying that the appellant was served with a copy of the record before the agency, U.S. VET. APP. R. 10(a). Thereafter, both parties should proceed in accordance with the Court’s Rules of Practice and Procedure. It is further
ORDERED that, upon the Secretary’s filing of the Rule 10 notice, this matter is returned to the Clerk for further assignment to a single Judge in the normal course.

. The facts below are based on the parties’ submissions, confirmed by the preliminary record, and undisputed.

. Our concurring colleagues correctly note that Reed involved an untimely misfiling. However, the analysis in that decision was not predicated on the fact that it was untimely-

. Although the claimant submitted his NOA on a Form 9 (Substantive Appeal to the Board), it was "undisputed that Mr. Bailey intended that document to serve as his [NOA] to the Veterans Court.” Id. at 1383.

. In this decision, we decline to address and leave for another day the question whether relaxed due diligence is required for the period between a timely misfiling and learning that the NOA was misfiled in the wrong location. Although not necessary to our holding, we observe that — if relaxed due diligence were required between his timely misfiling and learning that he had misfiled — then Mr. Rickett's actions during that period would appear to have satisfied that requirement. See e.g., Brandenburg, 371 F.3d at 1363 (RO informed prospective appellant 23 days after his misfiling that he had misfiled his NOA, and he then filed at the Court within 3 months); Bailey (Edward), 351 F.3d at 1383 (prospective appellant filed NOA at Court 6 months after no response from filing at RO); Santana-Venegas, 314 F.3d at 1295-96 (RO informed prospective appellant 70 days after his misfiling that he had misfiled his NOA, and he filed at the Court 21 days later).

. Professional Staff Group II
has overall responsibility for providing advice concerning VA’s multi-billion-dollar programs of disability and death compensation and pension for Veterans and their survivors, and Federal life-insurance programs for service members and Veterans. In addition, the group is responsible for all legal advice concerning the national cemetery system (except land acquisition, which is handled by [Professional Staff Group] V) and various burial benefits administered by the Veterans Benefits Administration. The group is also responsible for reviewing pro *225 posed and final rules for all VA programs to ensure compliance with the Administrative Procedure Act, and other statutes and orders governing rulemaking.
Evaluating the U.S. Department of Veterans Affairs Office of General Counsel: Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Veterans’ Affairs, 111th Cong. 26 (2010) (statement of Will Gunn, General Counsel, U.S. Dep't of Veterans Affairs).

. As explained in note 5, supra, we decline to address in this decision whether relaxed due diligence was required of Mr. Rickett between his timely misfiling at the wrong location and his learning that he had misfiled.