**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 15-0835

WILLIE J. THREATT,                              APPELLANT,

    V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS,              APPELLEE.


Before PIETSCH, BARTLEY, and GREENBERG, *Judges*.

**O R D E R**

This is an equitable tolling case. *See Henderson v. Shinseki*, 562 U.S. 428 (2011); *see also Bove v. Shinseki*, 25 Vet.App. 136 (2011). Before the Court is the issue of whether the appellant's March 4, 2015, Notice of Appeal (NOA) of a February 20, 2003, Board of Veterans' Appeals (Board) decision is timely, including whether a May 30, 2003, letter written by the appellant and submitted to the VA regional office (RO) by his U.S. Representative abated the finality of the February 2003 Board decision.

**I.**

On February 20, 2003, the Board issued a decision denying the requests of the appellant, Willie J. Threatt, Jr., to reopen his claims for benefits based on service connection for a right hip disability, a left hip disability, and a back disability. Preliminary Record (P.R.), Attachment 1, at 1586-99.

On March 5, 2003, the appellant sent a letter to the office of his U.S. Representative, Robert Scott, a member of Congress from Virginia, in which he stated that

> [w]e are writing this letter in reference to the decision received from [the Board] dated February 20, 2003 . . . . I am not satisfied with the outcome of the appeal. I would like for your [Congressman[] Scott['s]] office to send a copy of this letter to [the Board] in Washington, D.C., to request a copy of all my medical records they have in their file. . . . I therefore in seeking to be allowed to prove my claim, request that [the Board] personally or through some other agency or Department certify a complete copy of my military medical records from all my duty stations.

P.R., Attachment 2, at 1480. Representative Scott forwarded that letter to the Board and, on April 9, 2003, within 120 days of the mailing of the Board decision, the letter was received by the Board. *Id.* at 1487-89.

On April 14, 2003, the appellant sent another letter to the office of Representative Scott, stating that he "[had] not received any detailed response or medical records on file; nor a complete (certified) copy of my military records as requested." *Id.* at 1477-78. He also stated that "since the time limit given to me in the appeals notice (VA Form 4597) that accompanied the [Board] decision (Feb. 20, 2003) of (120 days) to use all our options subsequently is running out, I am hoping this letter along with the letter (3/5/03) will get to officials." *Id.* at 1478. The appellant further requested that Representative Scott's legislative assistant send copies of his March 5, 2003, and April 14, 2003, letters to the Court and the VA General Counsel. *Id.*

On April 22, 2003, the Board sent the appellant a response to the March 5, 2003, letter. *Id.* at 1481-82. The Board referred to the March 5, 2003, letter as "correspondence" and stated that "[t]he denial of the Board's February 20, 2003, decision was final," but that the appellant may wish to (1) file a motion for reconsideration of the decision in writing with the Board, or (2) inquire to the Court regarding its filing procedures. *Id.* at 1481. This letter was copied to the office of Representative Scott; the offices of Disabled American Veterans (DAV) in Washington, D.C., and Roanoke, Virginia; and the VA RO in Roanoke. *Id.* at 1482. On May 10, 2003, the appellant sent another letter to the office of Representative Scott, stating that "I started a timely request, responding to the decision received from [the Board]; dated February 2003 (Docket No. 97-17295); in a letter dated March 5, 2003." *Id.* at 1443. He also stated that "[t]his merry go round is making me dizzy (confused) and consuming time," requesting that his Representative's office again forward his request for medical records. *Id.* On May 12, 2003, the appellant's correspondence was forwarded to the Board. *Id.* at 1476.

On May 30, 2003, the appellant sent another letter to the office of Representative Scott, stating that

> [w]e are writing this letter because as to date, I have not received a copy of my medical records on file with (VA) in Roanoke VA. and/or [the Board] in Washington, D.C. . . . It seems[] I am being denied the opportunity to use the four options described on (VA-Form 4597) [Notice of Appellate Rights] because the (120 days) time limit is being systematically expelled with my freedom to be allowed to prove my claim.
>
> I am therefore at this time seeking to use this letter to officially file a claim with ("the Court") United States Court of Appeals for Veteran's Claims. I use the word (officially) because none of my previous letters (4-14-03), requested to be sent to ("the Court"). . . . I therefore under protest to all four options given on (VA-Form 4597), at this time and date of this letter (5-30-03) seek to file a claim with ("the Court"). . . . I request your (Congressman[] Scott's) office to send copies of this letter and the letters of (3-5-03; 4-14-03; 5-10-03; 4-22-03) to ("the Court") United States Court of Appeals for Veterans Claims . . . and to inquire of ("the Court") filing procedure and the form of Notice of Appeal with filing fee (if any exemptions) and other matters covered by ("the Court") rules.

*Id.* at 1442.

On August 7, 2003, the appellant's May 30, 2003, letter was forwarded to the RO. *Id.* at 1440. The RO received the letter on August 11, 2003, more than 120 days after the Board mailed the February 2003 decision, and processed it as "congressional liaison" correspondence. *Id.* On August 12, 2003, the RO replied to Representative Scott's office, stating that the appellant's service medical records had been mailed to him, and that "Mr. Threatt must initiate the appeal to the Court . . . . He must send his appeal directly to [the Court]; he cannot submit his appeal to [the Court] through either the [RO] or your office." *Id.* at 1438. The RO's letter was copied to DAV. *Id.* at 1439. It was not sent to the appellant.

Also on August 12, 2003, the RO sent a letter to the appellant requesting additional information concerning the appellant's claims that were not addressed in the February 20, 2003, Board decision, including claims based upon post-traumatic stress disorder (PTSD), chronic depression, anxiety, and epididymitis. P.R., Attachment 3, at 1450. On August 15, 2003, the RO provided the appellant a copy of his service medical records and medical treatment records. *Id.* at 1437.

On January 23, 2004, the appellant sent two letters directly to the Board. P.R., Attachment 4 at 1420-23. In the first letter, the appellant stated that he was filing a motion for reconsideration of the February 20, 2003, decision. *Id.* at 1420-21. In the second letter, the appellant stated that he was filing a motion requesting the Board revise the February 20, 2003, decision based on clear and unmistakable error. *Id.* at 1422-23. There is no evidence the Board responded to these letters.

On January 31, 2007, the appellant requested that the RO reopen his hip and back claims. P.R., Attachment 4, at 656. In the RO's June 2008 denial of that request, the RO noted that "[t]he appeal period [for the February 20, 2003 decision] has expired and the decision is now final." *Id.* at 654. On October 2, 2009, the appellant appointed as his representative an attorney from the Veterans Benefits Clinic at William and Mary Law School. *Id.* at 577. On March 2, 2010, the appellant appealed all his claims to the Board. *Id.* at 662. The appellant pursued appeals of his claims within VA until the Board ultimately issued a decision on July 7, 2014, in which it declined to reopen his hip and back claims. *Id.* at 3-15.

On October 30, 2014, the appellant appealed the July 2014 Board decision to this Court. On March 4, 2015, counsel for the appellant discovered the letters from 2003 between the appellant, his Congressman, and VA, and immediately appealed the February 20, 2003, Board decision to this Court. Appellant's Motion for Equitable Tolling at 2. On March 19, 2015, the appellant's October 30, 2014, appeal was stayed pending the resolution of this new appeal. In an April 24, 2015, motion for equitable tolling regarding this new appeal, the appellant stated that his March 2015 NOA should be considered timely filed because his May 2003 correspondence to the RO constituted a timely misfiled appeal of the February 20, 2003, Board decision. Appellant's Motion for Equitable Tolling at 16-19. Following supplemental submissions by appellant and the Secretary, oral argument was held on January 14, 2016.

3

## II.

### A.

When Congress established this Court through the Veterans' Judicial Review Act (VJRA), Pub. L. No. 100-687, 102 Stat. 4105 (1988), it provided a 120-day period after the mailing of a Board decision during which an appellant may appeal that decision to the Court. 38 U.S.C. § 7266. The U.S. Supreme Court found that this 120-day appeal period "does not have jurisdictional attributes" but "is nevertheless an important procedural rule." *Henderson*, 562 U.S. at 441-42. In the wake of *Henderson*, this Court held in *Bove* that the 120-day appeal period was subject to the doctrine of equitable tolling. The Court held that the doctrine might be applied according to the caselaw that preexisted *Henderson*, specifically

> when circumstances precluded a timely filing despite the exercise of due diligence, such as (1) a mental illness rendering one incapable of handling one's own affairs or other extraordinary circumstances beyond one's control, (2) reliance on the incorrect statement of a VA official, or (3) a misfiling at the [RO] or the Board.

*Bove*, 25 Vet.App. at 140 (citing *Brandenburg v. Principi*, 371 F.3d 1362, 1364 (Fed. Cir. 2004); *Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004); *Santana-Venegas v. Principi*, 314 F.3d 1293, 1298 (Fed. Cir. 2002); *Bailey v. West*, 160 F.3d 1360, 1365-68 (Fed. Cir. 1998) (en banc); *McCreary v. Nicholson*, 19 Vet.App. 324 (2005), *adhered to on reconsideration by* 20 Vet.App. 86 (2006)). Regarding misfilings, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has held that "[a]s a matter of law, [] a veteran who misfiles his or her notice of appeal at the same [RO] from which the claim originated within the 120-day judicial appeal period of 38 U.S.C. § 7266, thereby actively pursues his or her judicial remedies, despite the defective filing, so as to toll the statute of limitations." *Santana-Venegas*, 314 F.3d at 1298; *see also Jacquay v. Principi*, 304 F.3d 1276, 1288-89 (2002).

Congress also established in the VJRA that the Board Chairman may reconsider a Board decision on the Chairman's initiative or upon motion of the claimant. 38 U.S.C. § 7103. The Secretary further set forth that "[a] motion for reconsideration of a prior Board of Veterans' Appeals decision may be filed at any time." 38 C.F.R. § 20.1001(b) (2015). With regard to the effect of motions for reconsideration on a claimant's other appellate rights, the Court has held that, when a claimant files a motion for reconsideration with the Board during the 120-day judicial appeal period, the finality of the initial Board decision is abated by that motion for reconsideration. *Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991). "A new 120-day period begins to run on the date on which the [Board] mails to the claimant notice of its denial of the motion to reconsider." *Id.*

> The Court built upon the *Rosler* holding with its decision in *Ratliff*, in which it held:
>
> [W]hen a written expression of disagreement with a Board decision is filed at the RO during the 120-day period to file an NOA, the filing abates finality of the Board decision for purposes of appealing to the Court until one of the following actions is taken: (1) The Secretary determines the written disagreement is an NOA and returns

4

it to the claimant with information concerning the proper location to file an appeal or forwards it to the Court and so notifies the claimant; (2) the Board Chairman determines the status of the document, that is, whether it is a motion for Board reconsideration, and notifies the claimant of his determination; or (3) the claimant files an NOA with the Court and, assuming the Court becomes aware that before the NOA was filed a written disagreement was filed with the RO within the Court's appeal period, the Court determines that the written disagreement was a misfiled NOA and not a motion for Board reconsideration.

. . . [I]f the Secretary returns the written disagreement to the claimant or the Board determines that the written disagreement does not constitute a motion for Board reconsideration, the Secretary must notify the claimant that the Board decision, as of the date of notification to the claimant, is now deemed final and that the claimant has a new 120-day appeal period beginning with the date of the mailing of the notification.

26 Vet.App. 356, 360-61 (2013). The Court predicated its holding on the Secretary's stated policy in 2013 that the RO "must treat any written communication expressing disagreement with a Board decision as a possible motion for reconsideration . . . thus ensuring that the spirit of the pro-claimant system is satisfied." *Id.* at 358 (citing VA ADJUDICATION PROCEDURES MANUAL REWRITE (M21-1MR), pt. I, ch. 5, sec G.33.c-d (2013) ("VA claims processors must treat any written communication expressing disagreement with a [Board] decision as a possible [motion for reconsideration].")).

B.

The principles set forth in *Ratliff* guide the Court's decision here. In this case, the appellant, within 120 days of the mailing of the Board decision, submitted to the Board, via his congressional representative, Robert Scott, a written statement bearing his name and the docket number and date of the February 20, 2003, Board decision, indicating that he disagreed with that decision. This submission was a potential motion for reconsideration of the February 2003 decision, filed within 120 days after the decision was mailed, abating the finality of the decision for the purposes of appealing to this Court until one of the actions identified in *Ratliff* was taken.

The Secretary acted on the March 2003 letter on April 22, 2003, determining that it was "correspondence," not a motion for reconsideration; returning the written disagreement to the appellant; and reinforming the appellant of his appellate options, including his rights to file a motion for reconsideration or file an appeal with the Court. P.R., Attachment 2, at 1481-2. The Secretary's returning of the written disagreement to the appellant began a new 120-day appeal period. *See Ratliff*, 26 Vet.App. at 361 ("[I]f the Secretary returns the written disagreement to the claimant . . . the Board decision . . . is now deemed final and . . . the claimant has a new 120-day appeal period beginning with the date of the mailing of the notification.").

The appellant then submitted his May 30, 2003, letter to the RO, again via his representative, stating his intent to appeal the February 2003 Board decision to the Court. The parties agree that

5

this submission was an NOA.  *See* Secretary's Supplemental Memorandum of Law at 12 ("[T]he May 30, 2003, letter from Appellant to Rep. Scott expressed an actual present intent to appeal the February 2003 Board decision, [and] that letter was clearly intended to serve as a notice of appeal."); Appellant's Supplemental Memorandum of Law at 9 ("Appellant personally wrote and mailed his May 2003 letter–his timely misfiled NOA.").  The May 30, 2003, NOA was filed within the new 120-day appeal period that began on April 22, 2003, making it timely.

The only remaining inquiry is the effect of the appellant's misfiling of his timely NOA at the RO.  The Federal Circuit has stated clearly and unequivocally that "[a]s a matter of law, [] a veteran who misfiles his or her notice of appeal at the same [RO] from which the claim originated within the 120-day judicial appeal period of 38 U.S.C. § 7266, thereby actively pursues his or her judicial remedies, despite the defective filing, so as to toll the statute of limitations."  *Santana-Venegas*, 314 F.3d at 1298.  Given that the appellant filed the NOA at the RO from which his claim originated within the new 120-day judicial appeal period, the Court finds that the appellant has satisfied all the requirements of circumstance and diligence to warrant the application of equitable tolling.

C.

The Secretary argues that the appellant's correspondence and NOA were somehow defective because they were forwarded by his Congressman to VA.  Secretary's Supplemental Memorandum of Law at 13-15.  This argument lacks any support in law, as the Court's statute and the Federal Circuit in *Mapu v. Nicholson* indicate that it is *receipt* of an NOA that matters, not method of delivery.  *See* 38 U.S.C. § 7266 ("A notice of appeal shall be deemed to be received by the Court as follows: (1) On the date of receipt by the Court, if the notice is delivered.  (2) On the date of the United States Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed.");  *Mapu*, 397 F.3d at 1381 ("Statements made by members of Congress at that time clearly indicate that they believed the Veterans Court had previously been correct in requiring that the court actually receive a[n NOA] within 120 days, regardless of when or how the notice was sent." (citing 140 CONG. REC. 28,849 (1994) (Joint Explanatory Statement stating that "if a[n NOA] is delivered to the Court (for example, by private courier or delivery service), it would be considered timely filed if it is received by the Court within the 120-day limit established by Congress")).

Further, the actions of Representative Scott's office in this case are supported by VA procedures that contemplate, and encourage, the involvement of congressional Representatives in the benefits claims of their constituents.  *See* M21-1 (2003), pt. III, paras. 11.03 ("The Administrative activity identifies mail received from the White House, Members of Congress, national headquarters of service organizations, etc.  This mail is immediately handcarried to the controlling office."), 11.08 ("Every correspondent will be furnished, insofar as the limitations of the law permit, with a fully informative reply to his or her letter. . . . Keep Members of Congress who have requested that they be advised of subsequent developments in a case and duly authorized representatives actively prosecuting claims fully informed at all times of action taken."); VA OFFICE OF CONGRESSIONAL AND LEGISLATIVE AFFAIRS LIAISON SERVICE, CASEWORK GUIDE, at 3-4 ("[VA] maintains a presence on Capitol Hill to provide a convenient on-site location where Members can

6

obtain assistance on casework and other VA-related issues for their veteran constituency. . . . Letters can be faxed, mailed, or e-mailed to the [Congressional Liaison Service]."). To the extent that the Secretary argues that the appellant's Congressman was not accredited by VA as an agent or attorney under 38 C.F.R. § 14.629(b), the forwarding of letters from the appellant, under cover requesting that VA "look into this situation" and "respond directly to the constituent" (P.R., Attachment 2, at 1476), hardly constitutes "assist[ing] claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney," 38 C.F.R. § 14.629(b)(1) regardless of the content of the forwarded correspondence. The Court thus discerns no legal significance in Representative Scott's involvement with the appellant's claim regarding its status at VA or the Court.

The Secretary argued in his brief that the appellant does not meet the diligence requirement of equitable tolling, either because he did not have a good faith mistaken belief as to the proper location to file an NOA, or because his postfiling actions do not reflect diligence. The Secretary went so far as to state that "[t]he due diligence requirement is not satisfied as a matter of law by the timely misfiling of a notice of appeal," and that "[a]ny bright line rule that would hold that a claimant satisfies the due diligence requirement as a matter of law simply because he or she 'timely misfiles' a notice of appeal . . . would be incompatible with [] the core requirements for equitable tolling." Secretary's Supplemental Memorandum of Law at 9. However, at oral argument, the Secretary stated:

> The Secretary acknowledges the Federal Circuit line of cases beginning with *Santana-Venegas* that informs that a timely misfiling NOA [sic] does satisfy the due diligence requirement as a matter of law in those circumstances where the misfiled document was submitted to the RO where the claim originally was initiated or at the Board. Nonetheless, those cases are not for application in this case because this case does not involve a timely misfiled NOA.

Oral Argument at 25:19-25:50, *Threatt v. McDonald*, U.S. Vet. App. No. 15-0835 (argued Jan. 14, 2016). Thus, although in briefing the Secretary challenged the appellant as to his due diligence, at oral argument the Secretary acknowledged the existence of applicable Federal Circuit precedent on this issue and challenged only that the appellant had timely misfiled an NOA.

We reiterate that the Federal Circuit has stated that "[t]he filing of the misdirected paper itself satisfies the diligence requirement as a matter of law," *Jacquay v. Principi*, 304 F.3d at 1288; that "[a]s a matter of law, [] a veteran who misfiles his or her notice of appeal at the same [RO] from which the claim originated within the 120-day judicial appeal period of 38 U.S.C. § 7266, thereby actively pursues his or her judicial remedies, despite the defective filing, so as to toll the statute of limitations," *Santana-Venegas*, 314 F.3d at 1298; that "as a matter of law, a veteran who attempts to file a notice of appeal by completing a document that is clearly intended to serve as [a notice of appeal] and who has that document delivered to the [RO] from which the veteran's claim originated within the 120-day statutory period for appeal is entitled to invoke the doctrine of equitable tolling." *Bailey*, 351 F.3d at 1385. These cases directly contradict the Secretary's statements regarding diligence in briefing and set forth a clear rule that the due diligence requirement *is* satisfied as a matter of law by the timely misfiling of a notice of appeal. The Court discerns no compelling reason

7

to deviate from this rule. Moreover, the Secretary has not provided authority for his statement that, in timely-misfiling cases, an appellant must have a good faith mistaken belief as to the proper filing location to invoke equitable tolling. In any event, the Court finds consideration of such a factor inapposite in this case given that the appellant reasonably selected a filing method that had proved successful and expedient in the past.

Finally, to the extent that the Secretary argues that *Ratliff* should not apply retroactively to the events in this case, he cites nothing in that decision or elsewhere in this case that would abridge the normal principle at this Court that judicial decisions operate retrospectively. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 95 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, *regardless of whether such events predate or postdate our announcement of the rule*." (emphasis added)). The Court thus applies *Ratliff* as above.

### III.

This veteran has diligently pursued his benefits claims for decades. VA's failure to forward this diligent veteran's appeal to this Court shall not impede the effectiveness of that appeal. Under the precedents of this Court, the Federal Circuit, and the Supreme Court, equitable tolling is warranted to render the appellant's May 30, 2003, NOA timely filed.

Thus, for the foregoing reasons, it is

ORDERED that this matter is returned to the Clerk of the Court. It is further

ORDERED that the Clerk of the Court is directed to accept the appellant's May 30, 2003, letter as a timely filed NOA. It is further

ORDERED that the appellant has 14 days from the date of this order to dispute the preparation or content of the record before the agency that was served to the appellant on May 11, 2015, and describe any good faith efforts that the parties have made to resolve the dispute.

DATED: May 17, 2016                                        PER CURIAM.


PIETSCH, *Judge*, concurring in the result: I concur with all parts of the majority's decision except for its discussion regarding due diligence. At oral argument, the Secretary withdrew the due diligence arguments he made in his brief and conceded that if the Court had determined that the appellant timely misfiled an NOA, then due diligence is established. Oral Argument at 25:09, *Threatt v. McDonald*, U.S. Vet. App. No. 15-0835 (argued Jan. 14, 2016), http://www.uscourts.cavc.gov/oral_arguments_audio.php. I would have accepted the Secretary's concession without further comment.

As well, I fear the ramifications of the decision as it currently stands. I believe that the majority's conclusion that due diligence is established as a matter of law is restricted to the narrow fact pattern presented here. The majority's decision, however, may provide a precedential basis for extending its bright line due diligence rule to all timely-misfiling cases. That concerns me because the question whether due diligence is established as a matter of law in timely-misfiling cases is a difficult one that this Court has struggled to answer.

Due diligence in timely-misfiling cases featured prominently in an en banc decision issued by this Court just 3 years ago. *See Rickett v. Shinseki*, 26 Vet.App. 210 (2013). Over strong dissents, the majority in *Rickett* decided that due diligence in timely-misfiling cases is judged by the totality of the circumstances and generally is not established as a matter of law, and the *Rickett* majority spent many paragraphs explaining that its ruling comports with the Federal Circuit precedent that the majority in this case cites. *Id.* at 220-23.

The *Rickett* decision is no longer good law. But that is because the Court was forced to withdraw it for procedural reasons, not because it was overturned, and the due diligence issue it resolved is now unsettled. *See Rickett v. McDonald*, 27 Vet.App. 240 (2015). I am concerned that the majority decision here, limited though it may be, establishes precedent that will significantly affect an issue that was heavily contested by the full Court in *Rickett*.[1] I do not think it prudent to turn loose a decision that may effectively resolve an issue that divided the full Court, particularly when we have a concession in hand.

Copies to:

Aniela K. Szymanski, Esq.

VA General Counsel (027)

---

[1] This case well demonstrates how a rule stating that due diligence is established as a matter of law in all cases where an NOA is timely misfiled can lead to problematic results. The majority allowed the appellant to enjoy access to this Court on the basis of an NOA he filed in 2003 without requiring him to demonstrate that he has pursued his claim during the more than a dozen years that have passed between then and now. In other words, the majority's opinion may be read to suggest that a prospective appellant is allowed to timely misfile an NOA, do nothing for more than a decade, and still receive judicial review of his claim. That is proof once more that equitable remedies and bright line rules do not interact well.

9