(Slip Opinion)          OCTOBER TERM, 2010          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HENDERSON, AUTHORIZED REPRESENTATIVE OF HENDERSON, DECEASED *v.* SHINSEKI, SECRETARY OF VETERANS AFFAIRS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 09–1036.   Argued December 6, 2010—Decided March 1, 2011

The Department of Veterans Affairs (VA) has a two-step process for
adjudicating veterans' benefits claims for service-connected disabili-
ties: A VA regional office makes an initial decision on the claim; and
a veteran dissatisfied with the decision may then seek *de novo* review
in the Board of Veterans' Appeals.  Before 1988, a veteran whose
claim was denied by the Board generally could not obtain further re-
view, but the Veterans' Judicial Review Act (VJRA) created the Court
of Appeals for Veterans Claims (Veterans Court), an Article I tribu-
nal, to review Board decisions adverse to veterans.  A veteran must
file a notice of appeal with that court within 120 days of the date
when the Board's final decision is properly mailed.  38 U. S. C.
§7266(a).

   After the VA denied David Henderson's claim for supplemental
disability benefits, he filed a notice of appeal in the Veterans Court,
missing the 120-day filing deadline by 15 days.  Henderson argued
that his failure to timely file should be excused under equitable toll-
ing principles.  While his appeal was pending, this Court decided
*Bowles* v. *Russell*, 551 U. S. 205, which held that the statutory limita-
tion on the length of an extension of time to file a notice of appeal in
an ordinary civil case is "jurisdictional," so that a party's failure to
file within that period could not be excused.  The Veterans Court con-
cluded that *Bowles* compelled jurisdictional treatment of the 120-day
deadline and dismissed Henderson's untimely appeal.  The Federal
Circuit affirmed.

*Held:* The deadline for filing a notice of appeal with the Veterans Court

does not have jurisdictional consequences.  Pp. 4–13.

   (a) Branding a procedural rule as going to a court's subject-matter jurisdiction alters the normal operation of the adversarial system. Federal courts have an independent obligation to ensure that they do not exceed the scope of their subject-matter jurisdiction and thus must raise and decide jurisdictional questions that the parties either overlook or elect not to press.  Jurisdictional rules may also cause a waste of judicial resources and may unfairly prejudice litigants, since objections may be raised at any time, even after trial.  Because of these drastic consequences, this Court has urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, *i.e.,* its subject-matter or personal jurisdiction.  *E.g., Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. ___, ___.  Among the rules that should not be described as jurisdictional are "claim-processing rules," which seek to promote the orderly progress of litigation by requiring parties to take certain procedural steps at specified times. Although filing deadlines are quintessential claim-processing rules, Congress is free to attach jurisdictional consequences to such rules. *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, applied a "readily administrable bright line" rule to determine whether Congress has done so: There must be a "clear" indication that Congress wanted the rule to be "jurisdictional."  *Id.,* at 515–516.  "[C]ontext, including this Court's interpretation of similar provisions in many years past, is relevant," *Reed Elsevier*, *supra*, at ___, to whether Congress has spoken clearly on this point.  Pp. 4–6.

   (b) Congress did not clearly prescribe that the 120-day deadline here be jurisdictional.  Pp. 7–12.

      (1) None of the precedents cited by the parties controls here.  All of the cases they cite—*e.g., Bowles, supra; Stone* v. *INS*, 514 U. S. 386; and *Bowen* v. *City of New York*, 476 U. S. 467—involved review by Article III courts.  This case, by contrast, involves review by an Article I tribunal as part of a unique administrative scheme.  Instead of applying a categorical rule regarding review of administrative decisions, this Court attempts to ascertain Congress' intent regarding the particular type of review at issue.  Pp. 7–8.

      (2) Several factors indicate that 120-day deadline was not meant to be jurisdictional.  The terms of §7266(a), which sets the deadline, provide no clear indication that the provision was meant to carry jurisdictional consequences.  It neither speaks in "jurisdictional terms" nor refers "in any way to the jurisdiction of the [Veterans Court]," *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 394.  Nor does §7266's placement within the VJRA provide such an indication.  Its placement in a subchapter entitled "Procedure," and not in the subchapter entitled "Organization and Jurisdiction," suggests that Con-

gress regarded the 120-day limit as a claim-processing rule. Most telling, however, are the singular characteristics of the review scheme that Congress created for adjudicating veterans' benefits claims. Congress' longstanding solicitude for veterans, *United States* v. *Oregon*, 366 U. S. 643, 647, is plainly reflected in the VJRA and in subsequent laws that place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions. The contrast between ordinary civil litigation—which provided the context in *Bowles*—and the system Congress created for veterans is dramatic. In ordinary civil litigation suits must generally be commenced within a specified limitations period; the litigation is adversarial; plaintiffs must gather the evidence supporting their claims and generally bear the burden of production and persuasion; both parties may appeal an adverse decision; and a final judgment may be reopened only in narrow circumstances. By contrast, a veteran need not file an initial benefits claim within any fixed period; the VA proceedings are informal and nonadversarial; and the VA assists veterans in developing their supporting evidence and must give them the benefit of any doubt in evaluating that evidence. A veteran who loses before the Board may obtain review in the Veterans Court, but a Board decision in the veteran's favor is final. And a veteran may reopen a claim simply by presenting new and material evidence. Rigid jurisdictional treatment of the 120-day period would clash sharply with this scheme. Particularly in light of "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor," *King* v. *St. Vincent's Hospital*, 502 U. S. 215, 220–221, n. 9, this Court sees no clear indication that the 120-day limit was intended to carry the harsh consequences that accompany the jurisdiction tag. Contrary to the Government's argument, the lack of review opportunities for veterans before 1988 is of little help in interpreting §7266(a). Section 7266(a) was enacted as part of the VJRA, and that legislation was decidedly favorable to veterans. Pp. 8–12.

589 F. 3d 1201, reversed and remanded.

ALITO, J., delivered the opinion of the Court, in which all other Members joined, except KAGAN, J., who took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–1036

DORETHA H. HENDERSON, AUTHORIZED REPRESEN-
TATIVE OF DAVID L. HENDERSON, DECEASED,
PETITIONER *v.* ERIC K. SHINSEKI, SECRE-
TARY OF VETERANS AFFAIRS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[March 1, 2011]

JUSTICE ALITO delivered the opinion of the Court.

A veteran whose claim for federal benefits is denied by the Board of Veterans' Appeals may appeal to the United States Court of Appeals for Veterans Claims (Veterans Court). To do so, the veteran must file a notice of appeal with the Veterans Court within 120 days after the date when the Board's final decision is properly mailed. 38 U. S. C. §7266(a). This case presents the question whether a veteran's failure to file a notice of appeal within the 120-day period should be regarded as having "jurisdictional" consequences. We hold that it should not.

## I

### A

The Department of Veterans Affairs (VA) administers the federal program that provides benefits to veterans with service-connected disabilities. The VA has a two-step process for the adjudication of these claims. First, a VA regional office receives and processes veterans' claims and makes an initial decision on whether to grant or deny

benefits. Second, if a veteran is dissatisfied with the regional office's decision, the veteran may obtain *de novo* review by the Board of Veterans' Appeals. The Board is a body within the VA that makes the agency's final decision in cases appealed to it. §§7101, 7104(a).

The VA's adjudicatory "process is designed to function throughout with a high degree of informality and solicitude for the claimant." *Walters* v. *National Assn. of Radiation Survivors*, 473 U. S. 305, 311 (1985). A veteran faces no time limit for filing a claim, and once a claim is filed, the VA's process for adjudicating it at the regional office and the Board is *ex parte* and nonadversarial, 38 CFR §§3.103(a), 20.700(c) (2010). The VA has a statutory duty to assist veterans in developing the evidence necessary to substantiate their claims. 38 U. S. C. §§5103(a) (2006 ed., Supp. III), 5103A (2006 ed.). And when evaluating claims, the VA must give veterans the "benefit of the doubt" whenever positive and negative evidence on a material issue is roughly equal. §5107(b). If a regional office denies a claim, the veteran has a generous one-year time limit to initiate an appeal to the Board. §7105(b)(1); 38 CFR §20.302(a). A veteran may also reopen a previously denied claim at any time by presenting "new and material evidence," 38 U. S. C. §5108, and decisions by a regional office or the Board are subject to challenge at any time based on "clear and unmistakable error," §§5109A, 7111.

Before 1988, a veteran whose claim was rejected by the VA was generally unable to obtain further review. 38 U. S. C. §211(a) (1988 ed.).[1] But the Veterans' Judicial Review Act (VJRA), 102 Stat. 4105 (codified, as amended,

─────────

[1] Section 211(a) did not foreclose judicial review of constitutional challenges to veterans' benefits legislation, *Johnson* v. *Robison*, 415 U. S. 361, 366–374 (1974), or of challenges to VA benefits regulations based on later-in-time statutes that the VA did not administer exclusively, *Traynor* v. *Turnage*, 485 U. S. 535, 541–545 (1988).

in various sections of 38 U. S. C. (2006 ed. and Supp. III)), created the Veterans Court, an Article I tribunal, and authorized that court to review Board decisions adverse to veterans.[2] §§7251, 7252(a) (2006 ed.). While proceedings before the Veterans Court are adversarial, see §7263, veterans have a remarkable record of success before that tribunal. Statistics compiled by the Veterans Court show that in the last decade, the court ordered some form of relief in around 79 percent of its "merits decisions."[3]

Review of Veterans Court decisions on certain issues of law is available in the United States Court of Appeals for the Federal Circuit. §7292. Federal Circuit decisions may in turn be reviewed by this Court by writ of certiorari.

B

David Henderson served in the military during the Korean War. In 1992, the VA gave Henderson a 100-percent disability rating for paranoid schizophrenia, and in 2001, he filed a claim for supplemental benefits based on his need for in-home care. After a VA regional office and the Board denied his claim, he filed a notice of appeal with the Veterans Court, but he missed the 120-day filing deadline by 15 days. See §7266(a).

The Veterans Court initially dismissed Henderson's appeal as untimely. It concluded that Henderson was not entitled to equitable tolling of the deadline because he had not shown that his illness had caused his tardy filing. Later, the court granted Henderson's motion for reconsideration, revoked the dismissal, and set the case for argu-

_____

[2] When such an appeal is taken, the Veterans Court's scope of review, §7261, is similar to that of an Article III court reviewing agency action under the Administrative Procedure Act, 5 U. S. C. §706.

[3] See United States Court of Appeals for Veterans Claims, Annual Reports 2000–2009, http://uscourts.cavc.gov/documents/Annual_Report_FY_2009_October_1_2008_to_September_30_2009.pdf (as visited Feb. 25, 2011, and available in Clerk of Court's case file).

ment. While Henderson's appeal was pending, however, we decided *Bowles* v. *Russell*, 551 U. S. 205 (2007). In *Bowles*, we held that the statutory limitation on the length of an extension of the time to file a notice of appeal in an ordinary civil case, 28 U. S. C. §2107(c) (2006 ed., Supp. III), is "jurisdictional," and we therefore held that a party's failure to file a notice of appeal within that period could not be excused based on equitable factors, or on the opposing party's forfeiture or waiver of any objection to the late filing. *Bowles*, *supra*, at 213–214.

After we announced our decision in *Bowles*, the Veterans Court directed the parties to brief that decision's effect on prior Federal Circuit precedent that allowed the equitable tolling of the 120-day deadline for filing a notice of appeal in the Veterans Court. A divided panel of the Veterans Court concluded that *Bowles* compelled jurisdictional treatment of the 120-day deadline and dismissed Henderson's untimely appeal for lack of jurisdiction. *Henderson* v. *Peake*, 22 Vet. App. 217 (2008).

Henderson then appealed to the Federal Circuit, and a divided en banc court affirmed. 589 F. 3d 1201 (2009). We granted certiorari. 561 U. S. ___ (2010).

## II

In this case, as in others that have come before us in recent years, we must decide whether a procedural rule is "jurisdictional." See *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. ___ (2010); *Union Pacific R. Co.* v. *Locomotive Engineers and Trainmen Gen. Comm. of Adjustment, Central Region*, 558 U. S. ___ (2009); *Bowles*, *supra; Arbaugh* v. *Y & H Corp.*, 546 U. S. 500 (2006); *Eberhart* v. *United States*, 546 U. S. 12 (2005) *(per curiam); Scarborough* v. *Principi*, 541 U. S. 401 (2004); *Kontrick* v. *Ryan*, 540 U. S. 443 (2004). This question is not merely semantic but one of considerable practical importance for judges and litigants. Branding a rule as going to a court's subject-matter

jurisdiction alters the normal operation of our adversarial system. Under that system, courts are generally limited to addressing the claims and arguments advanced by the parties. See *Sanchez-Llamas* v. *Oregon*, 548 U. S. 331, 356–357 (2006). Courts do not usually raise claims or arguments on their own. But federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. See *Arbaugh*, *supra*, at 514.

Jurisdictional rules may also result in the waste of judicial resources and may unfairly prejudice litigants. For purposes of efficiency and fairness, our legal system is replete with rules requiring that certain matters be raised at particular times. See *Sanchez-Llamas*, *supra*, at 356–357. Objections to subject-matter jurisdiction, however, may be raised at any time. Thus, a party, after losing at trial, may move to dismiss the case because the trial court lacked subject-matter jurisdiction. *Arbaugh*, 546 U. S., at 508. Indeed, a party may raise such an objection even if the party had previously acknowledged the trial court's jurisdiction. *Ibid.* And if the trial court lacked jurisdiction, many months of work on the part of the attorneys and the court may be wasted.

Because the consequences that attach to the jurisdictional label may be so drastic, we have tried in recent cases to bring some discipline to the use of this term. We have urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction. *Reed Elsevier*, *supra*, at \_\_\_ (slip op., at 6); *Kontrick*, *supra*, at 455. Other rules, even if important and mandatory, we have said, should not be given the jurisdictional brand. See *Union Pacific*, 558 U. S., at \_\_\_ (slip op., at 12).

Among the types of rules that should not be described as jurisdictional are what we have called "claim-processing

rules." These are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times. *Id.*, at ___ (slip op., at 14); *Eberhart*, *supra*, at 19; *Scarborough*, *supra*, at 413–414; *Kontrick*, *supra*, at 455–456. Filing deadlines, such as the 120-day filing deadline at issue here, are quintessential claim-processing rules. Accordingly, if we were simply to apply the strict definition of jurisdiction that we have recommended in our recent cases, we would reverse the decision of the Federal Circuit, and this opinion could end at this point.

Unfortunately, the question before us is not quite that simple because Congress is free to attach the conditions that go with the jurisdictional label to a rule that we would prefer to call a claim-processing rule. See *Bowles*, *supra*, at 212–213. The question here, therefore, is whether Congress mandated that the 120-day deadline be "jurisdictional." In *Arbaugh*, we applied a "readily administrable bright line" rule for deciding such questions. 546 U. S., at 515–516. Under *Arbaugh*, we look to see if there is any "clear" indication that Congress wanted the rule to be "jurisdictional." *Ibid.* This approach is suited to capture Congress' likely intent and also provides helpful guidance for courts and litigants, who will be "duly instructed" regarding a rule's nature. See *id.*, at 514–515, and n. 11.

Congress, of course, need not use magic words in order to speak clearly on this point. "[C]ontext, including this Court's interpretation of similar provisions in many years past, is relevant." *Reed Elsevier*, *supra*, at ___ (slip op., at 13). When "a long line of this Court's decisions left undisturbed by Congress," *Union Pacific*, *supra*, at ___ (slip op., at 13), has treated a similar requirement as "jurisdictional," we will presume that Congress intended to follow that course. See *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 133–134, 139 (2008).

## III

With these principles in mind, we consider whether Congress clearly prescribed that the deadline for filing a notice of appeal with the Veterans Court should be "jurisdictional."

## A

Contending that the 120-day filing deadline was meant to be jurisdictional, the Government maintains that *Bowles* is controlling. The Government reads *Bowles* to mean that all statutory deadlines for taking appeals in civil cases are jurisdictional. Since §7266(a) establishes a statutory deadline for taking an appeal in a civil case, the Government reasons, that deadline is jurisdictional.

We reject the major premise of this syllogism. *Bowles* did not hold categorically that every deadline for seeking judicial review in civil litigation is jurisdictional. Instead, *Bowles* concerned an appeal from one court to another court. The "century's worth of precedent and practice in American courts" on which *Bowles* relied involved appeals of that type. See 551 U. S., at 209–210, and n. 2.

Contending that *Bowles'* reasoning extends to the judicial review of administrative decisions, the Government relies on *Stone* v. *INS*, 514 U. S. 386 (1995). There, without elaboration, we described as " 'mandatory and jurisdictional' " the deadline for seeking review in the courts of appeals of final removal orders of the Board of Immigration Appeals. *Id.*, at 405 (quoting *Missouri* v. *Jenkins*, 495 U. S. 33, 45 (1990)). The Government also notes that lower court decisions have uniformly held that the Hobbs Act's 60-day time limit for filing a petition for review of certain final agency decisions, 28 U. S. C. §2344, is jurisdictional. Brief for United States 18.

Petitioner correctly observes, however, that Veterans Court review of a VA decision denying benefits differs in many respects from court of appeals review of an agency

decision under the Hobbs Act. Cf. *Shinseki* v. *Sanders*, 556 U. S. ___, ___ (2009) (slip op., at 15) ("Congress has made clear that the VA is not an ordinary agency"). And there is force to petitioner's argument that a more appropriate analog is judicial review of an administrative decision denying Social Security disability benefits. The Social Security disability benefits program, like the veterans benefits program, is "unusually protective" of claimants, *Heckler* v. *Day*, 467 U. S. 104, 106–107 (1984). See also *Sims* v. *Apfel*, 530 U. S. 103, 110–112 (2000) (plurality opinion). Indeed, the Government acknowledges that "the Social Security and veterans-benefit review mechanisms share significant common attributes." Brief for United States 16. And long before Congress enacted the VJRA, we held that the deadline for obtaining review of Social Security benefits decisions in district court, 42 U. S. C. §405(g), is not jurisdictional. *Bowen* v. *City of New York*, 476 U. S. 467, 478, and n. 10 (1986); *Mathews* v. *Eldridge*, 424 U. S. 319, 328, n. 9 (1976); *Weinberger* v. *Salfi*, 422 U. S. 749, 763–764 (1975).

In the end, however, none of the precedents cited by the parties controls our decision here. All of those cases involved review by Article III courts. This case, by contrast, involves review by an Article I tribunal as part of a unique administrative scheme. Instead of applying a categorical rule regarding review of administrative decisions, we attempt to ascertain Congress' intent regarding the particular type of review at issue in this case.

### B

Several factors convince us that the 120-day deadline for seeking Veterans Court review was not meant to have jurisdictional attributes.

The terms of the provision setting that deadline, 38 U. S. C. §7266(a), do not suggest, much less provide clear evidence, that the provision was meant to carry jurisdic-

tional consequences. Section 7266(a) provides:

> "In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title."

This provision "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [Veterans Court]," *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 394 (1982). If Congress had wanted the 120-day time to be treated as jurisdictional, it could have cast that provision in language like that in the provision of the VJRA that governs Federal Circuit review of decisions of the Veterans Court. This latter provision states that Federal Circuit review must be obtained "within the time and in the manner prescribed for appeal to United States courts of appeals from United States district courts." §7292(a). Because the time for taking an appeal from a district court to a court of appeals in a civil case has long been understood to be jurisdictional, see *Bowles*, *supra*, at 209–210, and n. 2*,* this language clearly signals an intent to impose the same restrictions on appeals from the Veterans Court to the Federal Circuit. But the 120-day limit at issue in this case is not framed in comparable terms. It is true that §7266 is cast in mandatory language, but we have rejected the notion that "all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional." *Union Pacific*, 558 U. S., at \_\_\_ (slip op., at 12) (quoting *Arbaugh*, 546 U. S., at 510; internal quotation marks omitted). Thus, the language of §7266 provides no clear indication that Congress wanted that provision to be treated as having jurisdictional attributes.

Nor does §7266's placement within the VJRA provide

such an indication. Congress placed §7266, numbered §4066 in the enacting legislation, in a subchapter entitled "Procedure." See VJRA, §301, 102 Stat. 4113, 4115–4116. That placement suggests Congress regarded the 120-day limit as a claim-processing rule. Cf. *INS* v. *National Center for Immigrants' Rights, Inc.*, 502 U. S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text"). Congress elected not to place the 120-day limit in the VJRA subchapter entitled "Organization and Jurisdiction." See 102 Stat. 4113–4115.

Within that subchapter, a separate provision, captioned "Jurisdiction; finality of decisions," prescribes the jurisdiction of the Veterans Court. *Id.*, at 4113–4114. Subsection (a) of that provision, numbered §4052 in the enacting legislation, grants the Veterans Court "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals" and the "power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate." *Id.*, at 4113. It also prohibits the court from hearing appeals by the VA Secretary. Subsection (b) limits the court's review to "the record of proceedings before the [VA]," specifies the scope of that review, and precludes review of the VA's disability ratings schedule. *Ibid.* Nothing in this provision or in the "Organization and Jurisdiction" subchapter addresses the time for seeking Veterans Court review.

While the terms and placement of §7266 provide some indication of Congress' intent, what is most telling here are the singular characteristics of the review scheme that Congress created for the adjudication of veterans' benefits claims. "The solicitude of Congress for veterans is of long standing." *United States* v. *Oregon*, 366 U. S. 643, 647 (1961); see also *Sanders*, 556 U. S., at ___ (slip op., at 15). And that solicitude is plainly reflected in the VJRA, as well as in subsequent laws that "place a thumb on the

scale in the veteran's favor in the course of administrative and judicial review of VA decisions," *id.*, at ___ (Souter, J., dissenting) (slip op., at 2). See, *e. g.*, Veterans Claims Assistance Act of 2000, 114 Stat. 2096; Act of Nov. 21, 1997, 111 Stat. 2271; VJRA, §103, 102 Stat. 4106–4107.

The contrast between ordinary civil litigation—which provided the context of our decision in *Bowles*—and the system that Congress created for the adjudication of veterans' benefits claims could hardly be more dramatic. In ordinary civil litigation, plaintiffs must generally commence their suits within the time specified in a statute of limitations, see 28 U. S. C. §1658, and the litigation is adversarial. Plaintiffs must gather the evidence that supports their claims and generally bear the burden of production and persuasion. Both parties may appeal an adverse trial-court decision, see §1291, and a final judgment may be reopened only in narrow circumstances. See Fed. Rule Civ. Proc. 60.

By contrast, a veteran seeking benefits need not file an initial claim within any fixed period after the alleged onset of disability or separation from service. When a claim is filed, proceedings before the VA are informal and nonadversarial. The VA is charged with the responsibility of assisting veterans in developing evidence that supports their claims, and in evaluating that evidence, the VA must give the veteran the benefit of any doubt. If a veteran is unsuccessful before a regional office, the veteran may obtain *de novo* review before the Board, and if the veteran loses before the Board, the veteran can obtain further review in the Veterans Court. A Board decision in the veteran's favor, on the other hand, is final. And even if a veteran is denied benefits after exhausting all avenues of administrative and judicial review, a veteran may reopen a claim simply by presenting "new and material evidence." Rigid jurisdictional treatment of the 120-day period for filing a notice of appeal in the Veterans Court would clash

sharply with this scheme.

We have long applied "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *King* v. *St. Vincent's Hospital*, 502 U. S. 215, 220–221, n. 9 (1991); see also *Coffy* v. *Republic Steel Corp.*, 447 U. S. 191, 196 (1980); *Fishgold* v. *Sullivan Drydock & Repair Corp.*, 328 U. S. 275, 285 (1946). Particularly in light this canon, we do not find any clear indication that the 120-day limit was intended to carry the harsh consequences that accompany the jurisdiction tag.

The Government argues that there is no reason to think that jurisdictionally time-limited review is inconsistent with a pro-veteran administrative scheme because, prior to the enactment of the VJRA in 1988, VA decisions were not subject to any further review at all. Brief for United States 29. The provision at issue here, however, was enacted as part of the VJRA, and that legislation was decidedly favorable to veterans. Accordingly, the review opportunities available to veterans before the VJRA was enacted are of little help in interpreting 38 U. S. C. §7266(a).

## IV

We hold that the deadline for filing a notice of appeal with the Veterans Court does not have jurisdictional attributes. The 120-day limit is nevertheless an important procedural rule. Whether this case falls within any exception to the rule is a question to be considered on remand.[4]

The judgment of the United States Court of Appeals for the Federal Circuit is reversed, and the case is remanded

---

[4] The parties have not asked us to address whether the 120-day deadline in 38 U. S. C. §7266(a) is subject to equitable tolling, nor has the Government disputed that the deadline is subject to equitable tolling if it is not jurisdictional. See Brief for Petitioner 18. Accordingly, we express no view on this question.

for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KAGAN took no part in the consideration or decision of this case.