# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 13-85

WILSON J. AUSMER, JR.,                                          APPELLANT,

    V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS,                     APPELLEE.

## O R D E R

Before KASOLD, *Chief Judge*, and SCHOELEN and GREENBERG, *Judges.*

The appellant, Lieutenant Colonel Wilson J. Ausmer, Jr., appeals an October 25, 2011, Board of Veterans' Appeals (Board) decision that reopened his previously denied claim for disability compensation for bilateral foot disorders, but denied the claim on the merits. The Court received the appellant's Notice of Appeal (NOA) on January 7, 2013, more than 120 days after the date on which the Board mailed notice of its decision. *See* 38 U.S.C. § 7266(a) (NOA must be filed with the Court within 120 days after notice of the Board decision). This matter was referred to a panel for decision, with oral argument, to address an issue of first impression, namely: Whether the Servicemembers Civil Relief Act of 2003 (SCRA), 50 U.S.C. app. §§ 501–597b, applies to proceedings at this Court and to what extent the time to file an NOA at the Court may be tolled when the Board issues an adverse decision during a servicemember's active military service.[1]

For the reasons discussed below, the Court holds that the SCRA applies generally to proceedings at the Court, and further holds that section 526 of the SCRA automatically tolls the judicial appeal period during a servicemember's active military service. The Court also holds, under the circumstances of this case, that the appellant is entitled to an additional 90-day stay pursuant to sections 524 and 525 of the SCRA, after his service terminated, before the appeal period commenced. Accordingly, the Court finds that the appellant's NOA was timely filed with the Court.

## I. BACKGROUND
The appellant, a decorated U.S. Army veteran, honorably served stateside in Operation Desert Storm, in Iraq during Operation Iraqi Freedom, and in Afghanistan and Qatar during Operation

---

[1] Oral argument was held on October 30, 2013, at Harvard Law School in Cambridge, Massachusetts. The Court extends its appreciation to the law school for its hospitality. The Court also commends counsel for both parties, including the Legal Services Center of Harvard Law School, whose briefing and argument were a tremendous value to the Court as we endeavored to address some of the protections afforded by the SCRA and their applicability to proceedings commenced at the Court.

Enduring Freedom. In 2005, he was awarded VA disability compensation for diseases and injuries incurred during military service, including post-traumatic stress disorder (PTSD) with dysthymia, degenerative disc disease, tinnitus, headaches, and left leg radiculopathy. In January 2010, the appellant's combined disability rating for his service-connected disabilities was increased to 60%, which included a 30% disability rating for PTSD with dysthymia.

On May 16, 2011, the appellant was recalled to active duty. Prior to reporting for service, he notified the Kansas City, Missouri, regional office (RO) that he had been ordered to active duty, and he requested that VA suspend his compensation benefits effective May 31, 2011. Although the appellant had an appeal seeking to reopen a claim for disability compensation for bilateral foot disorders pending at the Board, he did not ask the Board to stay proceedings or otherwise provide the Board with an alternative address to which to mail notice of its decision.

While the appellant was stationed in Afghanistan, the Board mailed notice of its October 25, 2011, decision to the appellant's home address in Missouri. Sometime after the Board mailed its decision, but while the appellant was still on active duty in Afghanistan, his wife informed him that he had received mail from the Board. Based upon the information she relayed to him, the appellant understood that the Board had granted one of his claims, but denied another. The appellant returned from his overseas deployment on May 13, 2012, and shortly thereafter, on June 29, 2012, – eight months after the Board's decision – the appellant was discharged from active duty. The appellant did not file his NOA with the Court until January 7, 2013, 440 days after notice of mailing of the Board decision and 192 days after he was released from active duty.

The appellant states that for the first few months after returning home, he had anxiety attacks and a difficult time adjusting to civilian life. He also asserts that he had to deal with foot, back, and knee pain related to his service-connected disabilities. Consequently, he spent the first few months at home trying to destress from his service in Afghanistan. He also states that he was not aware until December 2012 that he could appeal the Board's decision. In December 2012, when he began to sort through the mail that had accumulated during his military service, he found a letter from his veterans service organization representative informing him that he could appeal the Board's decision to the Court. The appellant states that he promptly sought assistance and filed his NOA.

The appellant has submitted a letter from a psychologist, Dr. Mangold, who interviewed him in July 2013. Dr. Mangold states that as a result of challenges readjusting to civilian life, including the appellant's exacerbated and service-connected PTSD-related symptoms, "sorting through mail that had accumulated during his deployment was not something he could have reasonably been expected to do immediately upon his return." Appellant's Supplemental Brief (Br.) at Appendix 2. Dr. Mangold also states that there is "considerable medical literature . . . which points to reintegration difficulties following deployments" and opines that the appellant's "inability to immediately resume his civilian responsibilities does not reflect any lack of diligence on the part of the [appellant]; rather, it simply reflects the well documented difficulty veterans can face upon their return from active duty." *Id*. at Appendix 2, 4.

## II. THE PARTIES' ARGUMENTS

Because the appellant's NOA was received more than 120 days after the date on which notice of the Board's decision was mailed, 38 U.S.C. § 7266(a), the Court ordered the appellant to show cause why his appeal should not be dismissed as untimely, and ordered both parties to provide additional briefing on the SCRA and its applicability in this case. Both parties agree that because the appellant was on active duty when the Board issued its October 25, 2011, decision, pursuant to section 526(a) of the SCRA, the 120-day statutory appeal period was automatically tolled until June 29, 2012, the day he was released from military service. *See* 50 U.S.C. app. § 526(a).

Recognizing, however, that he did not file his NOA until more than 120 days passed after he was released from military service, the appellant proffers three additional arguments why the Court should accept his NOA as timely filed: (1) SCRA sections 524 and 525 permit the Court to stay the finality of the Board's decision for purposes of filing an NOA at the Court for up to 90 days after a servicemember's military service terminates, 50 U.S.C. app. §§ 524, 525; (2) equitable tolling of the appeal period is warranted on the grounds that "extraordinary circumstances" and difficulties readjusting to civilian life, including the appellant's exacerbated PTSD-related symptoms, precluded filing within 120 days of his release from active duty military service, *see Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004) (mental illness rendering one incapable of handling his own affairs); *McCreary v. Nicholson*, 19 Vet.App. 324 (2005) (extraordinary circumstances), *adhered to on reconsideration by* 20 Vet.App. 86 (2006); and (3) VA violated the appellant's right to due process because the Board failed to provide him with notice in a "manner reasonably calculated [] under all the circumstances" to apprise him of the Board decision and his right to judicial review of that decision, *see Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

In response, the Secretary asserts that (1) SCRA sections 524 and 525 are not applicable and the Court lacks jurisdiction to stay Board proceedings; (2) the appellant has not demonstrated entitlement to equitable tolling under the standards established in *Barrett* or *McCreary*, both *supra*, and (3) the appellant's due process rights were not violated because the Board mailed notice of its decision to the appellant's address of record, the appellant was made aware of the decision, and the SCRA automatically tolled the 120-day appeal period during the appellant's period of active duty military service.

## III. ANALYSIS

Final Board decisions will be reviewed by the Court when an NOA is filed with the Court within 120 days after the date on which notice of the decision is mailed. 38 U.S.C. § 7266(a). Following the U.S. Supreme Court's decision in *Henderson v. Shinseki*, 131 S. Ct. 1197, 1206 (2011), which held that the 120-day limit to file an NOA pursuant to section 7266(a) – although an important procedural rule – is not jurisdictional, this Court determined that review of adverse Board decisions can be obtained when an NOA is filed late, if the appellant demonstrates that equitable tolling is warranted. *Bove v. Shinseki*, 25 Vet.App. 136 (2011). In this case, the Court is asked to consider the applicability of the SCRA to proceedings at this Court and to what extent the time to file an NOA at the Court may be tolled when the Board issues an adverse decision during a servicemember's active military service.

## A. SCRA

On December 19, 2003, Congress enacted the SCRA as a recodification of the Soldiers' and Sailors' Civil Relief Act of 1940. The SCRA, which is designed to strengthen national security by allowing servicemembers "to devote their entire energy to the defense needs of the Nation," provides a wide range of protections for the civil rights of servicemembers on active duty in the U.S. military including "the temporary suspension of judicial and administrative proceedings." 50 U.S.C. app. § 502. In interpreting the preceding Act, the U.S. Supreme Court held that the "Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 U.S. 561, 575 (1943); *see also LeMaistre v. Leffers*, 333 U.S. 1, 6 (1948) ("[T]he Act must be read with an eye friendly to those who dropped their affairs to answer their country's call.").

The SCRA is wide reaching, applying in all United States jurisdictions, including all States, the District of Columbia, and all territories subject to the jurisdiction of the United States. 50 U.S.C. app. § 512(a). It applies to "any judicial or administrative proceeding commenced in any court or agency in any jurisdiction subject to th[e] Act," except criminal proceedings. 50 U.S.C. app. § 512(b). The plain language of the statute generally evidences Congress's intent for broad application of the SCRA. *See id*. Based on the plain language of the Act and recognizing Congress's longstanding solicitude for veterans, the Court holds that the SCRA generally applies to proceedings at the Court. *See generally Henderson*, 131 S. Ct. at 1205 (noting that Congress's solicitude for veterans is longstanding and "plainly reflected in the [Veterans' Judicial Review Act (VJRA)], as well as in subsequent laws that 'place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions'" (quoting *Shinseki v. Sanders*, 556 U.S. 396, 416 (2009) (Souter, J., dissenting))).

In the case of a servicemember who is a member of the Army, the SCRA defines "military service" as "active duty" as defined in section 101(d)(1) of title 10, United States Code. 50 U.S.C. app. § 511(2). Section 101(d) of title 10 in turn defines "active duty" to include "full-time duty in the active military service of the United States." 10 U.S.C. § 101(d). Finally, section 511(3) defines "period of military service," as "the period beginning on the date on which a servicemember enters military service and ending on the date on which the servicemember is released from military service or dies while in military service." 50 U.S.C. app. § 511(3).

### i. 50 U.S.C. app. § 526 – Tolling Provision

The tolling provision of the SCRA, entitled "Statute of limitations," states: "The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, . . . by or against the servicemember . . . ." 50 U.S.C. app. § 526(a).

As noted above, the parties agree that section 526(a) tolled the appellant's time to file an NOA during his military service. Although the parties do not dispute this matter, the Court must ensure that the statutory tolling provision applies to 38 U.S.C. § 7266 and, if so, whether, under the facts of this case, the appellant satisfies the statute's requirements to trigger its application.

4

The heading of section 526 suggests that the section's applicability may be limited to statutes of limitations. A "statute of limitations" is a

>statute establishing a time limit for suing in a civil case, based on the date when the claim accrued. . . . The purpose of such a statute is to require diligent prosecution of known claims, thereby providing finality and predictability in legal affairs and ensuring that claims will be resolved while evidence is reasonably available and fresh.

BLACK'S LAW DICTIONARY at 1422 (7th ed. 1999).

The 120-day period for filing an NOA at the Court is not a statute of limitations. It is, however, an "important procedural rule" aimed at promoting the "orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson*, 131 S. Ct. at 1203, 1206. Unlike ordinary civil litigation, where a dismissal for an untimely filing ordinarily puts an end to the matter, the veteran-friendly claims adjudication within VA, in certain circumstances, provides avenues for a claimant to adjudicate otherwise final matters. *See Bove*, 25 Vet.App. at 142-43. Thus, after *Henderson* held that this Court's 120-day rule was not intended to have jurisdictional attributes, 131 S. Ct. at 1204, this Court concluded that it is "the role of Congress and this Court . . . to enforce or adjust the 'important procedural rule' prescribed by Congress in section 7266." *Bove*, 25 Vet.App. at 143 (quoting *Henderson,* 131 S. Ct. at 1206).

With these considerations in mind, to determine whether Congress intended to limit the tolling provision to statutes of limitations, the Court will turn to the substance of section 526. Section 526(a) broadly states that "[t]he period of a servicemember's military service may not be included in computing any period limited by law . . . for the bringing of any action or proceeding." 50 U.S.C. app. § 526(a). Notwithstanding the section's heading, there is nothing in the plain language of the statute that suggests Congress intended to limit its applicability to statutes of limitations. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) ("'[T]he title of a statute . . . cannot limit the plain meaning of the text. For interpretive purposes, [it is] of use only when [it] shed[s] light on some ambiguous word or phrase." (quoting *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947))); *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05 (1988))), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994).

First, the plain language of the statute refers to "*any period* limited by law, regulation, or order," for the "bringing of *any action or proceeding*." 50 U.S.C. app. § 526(a) (emphasis added). Second, the stated purpose of the SCRA is to provide for the "temporary suspension of judicial and administrative proceedings . . . that may adversely affect the civil rights of servicemembers during their military service," 50 U.S.C. app. § 502(2). Applying section 526's tolling provision to the 120-day period in section 7266 would fulfill that purpose by protecting a servicemember's right to seek judicial review of an adverse Board decision. Finally, the U.S. Supreme Court examined nearly identical language in section 525 of the Soldiers' and Sailors' Civil Relief Act of 1940, and found

5

"[t]he statutory command . . . unambiguous, unequivocal, and unlimited." *Conroy v. Aniskoff*, 507 U.S. 511, 514 (1993).

Accordingly, for the reasons stated above, the Court holds that a servicemember's period of military service, as defined in the SCRA, 50 U.S.C. app. § 511, may not be included in computing the 120-day period in which a servicemember adversely affected by a Board decision must file an NOA at the Court.[2] *See generally Chisolm v. United States*, 298 F. App'x 957 (Fed. Cir. 2008) (time to bring suit on claim for military back pay, which accrued during service, did not begin to run until the servicemember was released from active duty); *see also Cronin v. United States*, 363 F. App'x 29 (Fed. Cir. 2010) (time to appeal Board for Correction of Naval Records decision tolled by period of active duty); *Freeman v. United States*, 98 Fed. Cl. 360, 371 (2011) (section 526 of the SCRA excluded active duty service in Iraq from calculation of limitations period). *But see Turner v. A. Passmore & Sons, Inc.*, 341 F. App'x 363, 370 (10th Cir. 2009) ("It is debatable whether [section 526] even applies under the circumstances of this case, since [the cross-appellant] is not seeking to toll a statute of limitation but a deadline in a pending action that was timely filed."). The Court further holds that section 526 does not require a servicemember to demonstrate that his military service prejudiced his ability to act in order to qualify for the statutory suspension of time. *See Conroy*, 507 U.S. at 515 (observing that because several provisions of the statute condition the protection offered on a showing that military service adversely affected the ability to assert or protect a legal right, Congress's omission of any such requirement in this section was deliberate).

*ii. Application of Section 526*

There is no dispute, and the Court so holds, that the appellant's period of military service on active duty in the U.S. Army from May 16, 2011, to June 29, 2012, satisfies the SCRA's definition of "military service." 50 U.S.C. app. § 511(2). Thus, applying section 526 to the facts of this case, the Court holds the appellant's time to file an NOA from the Board's October 25, 2011, decision was tolled until June 29, 2012, the date he was released from active duty. *See Diamond v. United States*, 344 F.2d 703, 707 (Ct. Cl. 1965) (holding that tolling under similar provision in the Soldiers' and Sailors' Civil Relief Act ended upon release from active duty). Accordingly, the appellant had 120 days from June 29, 2012, to file his NOA. In other words, to be timely, his NOA was due on October 29, 2012.[3]

The appellant's NOA, however, was not received at the Court until January 7, 2013. Thus, absent any other statutory or equitable considerations, his NOA would be untimely and his appeal would be dismissed. Therefore, the Court must consider whether any of the appellant's additional arguments warrant extending his time to file an NOA more than 120 days after he was released from

---

[2] The Court notes, however, that the SCRA expressly allows a servicemember to waive "any of the rights and protections provided by this Act." 50 U.S.C. app. § 517(a). Thus, a servicemember is not precluded from commencing an appeal at the Court during military service.

[3] Because the 120th day, October 27, 2012, was a Saturday, the Court's rules rendered the NOA due on Monday, October 29, 2012. *See* U.S. VET. APP. R. 26(a).

military service. In recognition of the difficulties that a servicemember faces upon returning from deployment to a combat zone, and for the reasons stated below, the Court holds, under the circumstances of this case, where the Board issued an adverse decision during the appellant's deployment and the appellant was released from active duty shortly after completion of that deployment, commencement of the appeal period shall be stayed for an additional 90 days following the appellant's release from military service.

### iii. Staying Commencement of the Judicial Appeal Period

The decision to grant a stay under the SCRA is within the sound discretion of the court. *See Boone*, 319 U.S. at 568 (stating that the legislative history of the SCRA's predecessor statute showed that judicial discretion, rather than "rigid and undiscriminating suspension of civil proceedings[,] was the very heart of the policy of the Act"). "A stay of an action . . . [or] proceeding . . . made pursuant to the provisions of [the SCRA] . . . by a court may be ordered for the period of military service and 90 days thereafter, or for any part of that period." 50 U.S.C. app. § 525. Pursuant to section 524 of the SCRA, a court may on its own motion, and must upon application by a servicemember, stay the execution of any judgment or order entered against a servicemember if the Court determines that the servicemember is "materially affected by reason of military service in complying with a court judgment or order." 50 U.S.C. app. § 524(a)(1). Section 524 applies to an action or proceeding "commenced in a court [or administrative agency[4]] against a servicemember before or during the period of the servicemember's military service or within 90 days after such service terminates." *Id.*

The appellant seeks to delay when the clock began to run on his time to file an NOA by relying on SCRA sections 524 and 525. He argues that, liberally construed, section 524, which grants a court the authority to "stay the execution of any judgment," contemplates an order to stay the finality of a Board decision for the purpose of filing an NOA because (1) an adverse Board decision places a claimant in a defensive posture analogous to that of a servicemember who has an action commenced against him during military service or within 90 days after such service terminates, and (2) "judgment" may include an adverse Board decision because the SCRA broadly defines "judgment" as "any judgment, decree, order, or ruling, final or temporary." 50 U.S.C. app. § 511(9). In response, the Secretary agrees that "judgment" may include a final Board decision, but he argues that sections 524 and 525 apply only to ongoing proceedings. Thus, the Secretary asserts that the appellant's request presumes the Court's jurisdiction so that it may stay a proceeding over which it lacks jurisdiction, namely: Board proceedings. The Court disagrees.

Because an adverse Board decision will become final and binding if an NOA is not timely filed at the Court, the Court agrees with the appellant that the Board's issuance of an adverse decision during military service is analogous to having an action commenced against a servicemember. The issuance of an adverse decision requires the servicemember to take some action to protect his legal rights, or otherwise be bound by the Board's determination. Furthermore, because the Court has

---

[4] The SCRA defines "court" as "a court or an administrative agency of the United States or of any State (including any political subdivision of a State), whether or not a court or administrative agency of record." 50 U.S.C. app. § 511(5).

7

exclusive jurisdiction to review decisions of the Board, 38 U.S.C. § 7252(a), the Court has jurisdiction to determine whether the time to file an appeal at the Court should be stayed because a servicemember's military service materially affects his ability to act timely upon the Board's adverse decision.[5] *See* 50 U.S.C. app. § 512(c) ("When under this Act . . . any application is required to be made to a court in which no proceeding has already been commenced with respect to the matter, such application may be made to any court which would otherwise have jurisdiction over the matter.").

In this case, the appellant asserts that he had a difficult time adjusting to civilian life after active duty in Afghanistan and that he was unable to immediately resume all day-to-day activities. As a result, he did not immediately review the mail that had accumulated during the 13 months that he had been recalled to active duty or take action to preserve his rights to seek review of the Board's adverse decision. The uncontroverted evidence shows that when the appellant was recalled to active duty, he had been rated 30% disabled as a result of service-connected PTSD with dysthymia, and that in June 2012, after he returned home from Afghanistan and was released from military service, he experienced anxiety attacks, difficulty sleeping, persisting anger, and hypervigilance. As a result of the challenges the appellant faced readjusting to civilian life, Dr. Mangold, the appellant's examining psychologist, opines that "sorting through mail that had accumulated during the appellant's deployment was not something he could have reasonably been expected to do immediately upon his return." Appellant's Supplemental Br. at Appendix 2, 4. He asserts that this inability "does not reflect any lack of diligence on the part of the [appellant]; rather, it simply reflects the well documented difficulty veterans can face upon their return from active duty." *Id*. at Appendix 4.

In support of his opinion, Dr. Mangold notes that "there is considerable medical literature (as well as overwhelming common sense) which points to reintegration difficulties following deployments." *Id*. at Appendix 2. For example, a 2012 Department of Health and Human Services publication noted that

---

[5] The Secretary erroneously relies on *Ribaudo v. Nicholson*, 20 Vet.App. 552 (2007) for the proposition that the Court lacks jurisdiction to stay the finality of the Board's decision for purposes of filing an NOA with the Court. *Ribaudo* addressed the Secretary's lack of authority to unilaterally stay the processing of a class of appeals before the Board when the Secretary disagrees with a decision of the Court and the decision is pending appeal at the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). *See id*. Based on those facts, the Court adopted the principle that underlies Rule 8(a) of the Federal Rules of Appellate Procedure, namely "'that the immediately subordinate tribunal has jurisdiction to act on a motion for a stay' even in a case where a Notice of Appeal has been filed seeking review in the Federal Circuit." *Id*. at 560 (quoting *In re Bailey*, 11 Vet.App. 348, 349 (1998) (Nebeker, C.J., dissenting)). Here, guided by the principles underlying the SCRA and acting within our authority "to enforce or adjust the 'important procedural rule' prescribed by Congress in section 7266," *Bove*, 25 Vet.App. at 143 (quoting *Henderson,* 131 S. Ct. at 1206), the Court has jurisdiction to address whether the time to file an appeal with the Court should be stayed because of the material effect a servicemember's military service may have on his ability to proceed timely.

[a]lthough the majority of veterans who return from Iraq and Afghanistan do not have a behavioral health condition and have not experienced a traumatic brain injury, all veterans experience a period of readjustment as they reintegrate into life with family, friends, and community. The veterans' juggling of military and family responsibilities, reintegration into civilian life in the United States after living in unfamiliar settings, and processing exposure to combat may contribute to problems for veterans themselves, as well as their spouses and family members. Behaviors needed to survive in a war zone, such as maintaining a constant state of alertness, may initially translate into troublesome behaviors in civilian life, such as feeling edgy or jumpy and being easily startled.

SUBSTANCE ABUSE AND MENTAL HEALTH SERVICES ADMINISTRATION, HHS, BEHAVORIAL HEALTH ISSUES AMONG AFGHANISTAN AND IRAQ U.S. WAR VETERANS, Publication No. (SMA) 12-4670 (2012) (citing TANIELIAN, T., JAYCOX, L.H., SCHELL, T.L., MARSHALL, G.N., BURNAM, M.A., EIBNER, C., et al., INVISIBLE WOUNDS OF WAR: SUMMARY AND RECOMMENDATIONS FOR ADDRESSING PSYCHOLOGICAL AND COGNITIVE INJURIES (2008); DEPARTMENT OF VETERANS AFFAIRS (VA), RETURNING FROM THE WAR ZONE, A GUIDE FOR FAMILIES OF MILITARY MEMBERS (2010) (retrieved from http://www.ptsd.va.gov/public/reintegration/guide-pdf/FamilyGuide.pdf); VA, RETURNING FROM THE WAR ZONE, A GUIDE FOR MILITARY PERSONNEL (2010) (retrieved from http://www.ptsd.va.gov/public/reintegration/guide-pdf/SMGuide.pdf)).

Further, the VA guide for military personnel recognizes that "[e]ach deployment is . . . different from the last" and that the adjustment to life at home "may actually become more difficult" with each deployment if the servicemember has "unresolved problems from previous separations and reunions." VA, RETURNING FROM THE WAR ZONE, A GUIDE FOR MILITARY PERSONNEL 1 (2010) (retrieved from http://www.ptsd.va.gov/public/reintegration/guide-pdf/SMGuide.pdf). Although "[m]ost service members will successfully readjust with few major problems," VA recognizes that "[i]t may take a few months" to do so and that the veteran, his family, and friends "need to be prepared for common stress reactions." *Id*. at 2; *see also id.* (stating that "it may take as long as a year to feel you are living a new-normal life again"); *id.* at 8 (noting that "[r]eadjustment to civilian life takes time" and advising returning veterans to "[t]ake your time adding responsibilities and activities back into your life").

Accordingly, recognizing the difficulties faced by servicemembers returning from deployment to a combat zone, where, as here, the Board issued its adverse decision during the appellant's combat deployment, the appellant was released from military service shortly after returning from that deployment, and the evidence establishes that the appellant had difficulty readjusting to civilian life, the Court finds that the appellant's deployment and military service materially affected his ability to protect his legal rights under section 524. As a result, the Court holds, pursuant to section 525, that commencement of the appeal period was stayed for 90 days after the appellant's military service terminated.

The Court's decision, which applies the provisions of sections 524 and 525 to stay commencement of the judicial appeal period for 90 days after a servicemember's release from military service when the evidence establishes that his military service materially affected his ability to protect his legal rights, is consistent with the liberal construction afforded to the SCRA, *see Boone*, *supra*, based on Congress's desire to protect servicemembers' civil rights by providing for the "temporary suspension of judicial and administrative proceedings," 50 U.S.C. app. § 502(2), *Henderson's* recognition that the 120-day limitations period prescribed by section 7266 was enacted as part of the VJRA, legislation that was decidedly favorable to veterans, 131 S. Ct. at 1206, and the Court's authority "to enforce or adjust" the 'important procedural rule'" as appropriate, *Bove*, 25 Vet.App. at 143 (quoting *Henderson,* 131 S. Ct. at 1206).

Based on the foregoing, the Court holds that it has the authority to apply sections 524 and 525 of the SCRA so that the finality of the Board's October 25, 2011, decision, for purposes of filing an appeal with the Court, was stayed for 90 days following the appellant's release from military service, until September 27, 2012. As a result, his NOA, received on January 7, 2013, was timely and the appellant may proceed to have his appeal heard on the merits.

## B. Additional Arguments

Because the Court holds that the appellant's NOA was timely filed under the provisions of the SCRA, the Court does not reach the question whether the appellant's difficulty in readjusting to civilian life meets the high burden pronounced in *Barrett* or whether equitable tolling is otherwise warranted based on extraordinary circumstances. *See Claiborne v. Nicholson*, 19 Vet.App. 181, 187 (2005) (noting that the *Barrett* standard is a high burden). Similarly, where as here, there are nonconstitutional grounds to find that the appellant timely filed his NOA and that his appeal may be heard on the merits, it is unnecessary for the Court to address the appellant's argument that the Board failed to provide him constitutionally sufficient notice of its decision.[6] *See Bucklinger v. Brown*, 5 Vet.App. 435, 440-41 (1993) ("It is '[a] fundamental and long-standing principle of judicial restraint ... that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988))).

## IV. CONCLUSION

Accordingly, pursuant to the Court's holdings and finding above, the appellant's January 7, 2013, NOA was timely filed with the Court.

---

[6] In recognition of the growing number of veterans, reservists, and national guardsman recalled to active duty, the Secretary may want to consider whether the Board's standard notice of appellate rights should be amended to include language informing servicemembers of the protections afforded by the SCRA. In particular, the notice might include language informing servicemembers that a period of military service shall not be included in computing the time to file an NOA from an adverse Board decision, and that, in certain circumstances, the servicemember may be entitled to an additional 90 days after service terminates before the appeal period begins to run if the military service materially affects his or her ability to file an NOA.

On consideration of the foregoing, it is

ORDERED that both parties should proceed in accordance with the Court's Rules of Practice and Procedure.

DATED: December 19, 2013                          PER CURIAM.