GREENBERG, Judge,
concurring:
I concur in the outcome of the majority opinion, but write separately to suggest that an equitable remedy in this case is unwarranted, not unavailable.
*213 I concur in Judge Hagel’s analysis of the statute. The one-year marriage requirement contained in 38 U.S.C. § 1304 is “unambiguous, unequivocal, and unlimited.” Conroy v. Aniskoff,[6] 507 U.S. 511, 514, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993). The plain language of section 1304 is not “so absurd or illogical that Congress could not have intended it,” id. at 517, 113 S.Ct. 1562, and its legislative history does not contravene the meaning of that plain language.[7] As the Supreme Court stated when reaching a similar conclusion in Conroy, ■
we cannot say that Congress would have found our straight-forward interpretation and application of its words either absurd or illogical. If the consequences of that interpretation had been — -or prove to be — as unjust as respondents contend, we are confident that Congress would have corrected the injustice — or will do so in the future.
Id. at 517-18, 113 S.Ct. 1562.
Notwithstanding the operation of the statute, the Court- should separately consider the application of its inherent power, which is the same as an Article III court when reviewing a federal administrative agency. See Henderson v. Shinseki, 562 U.S. 428, 131 S.Ct. 1197, 1201 n. 2, 179 L.Ed.2d 159 (2011) (stating that this Court’s scope of review is “similar to that of an Article III court reviewing agency action under the Administrative Procedure Act, 5 U.S.C. § 706”); see, for example, David A. Case, Article I Courts, Substantive Rights, and Remedies for Government Misconduct, 26 N. Ill. L.Rev. 101, 106 (2011) (“Once an Article I court is vested *214 with jurisdiction, it exercises all of the powers associated with the ‘Judicial Power of the United States’ pursuant to Article III of the Constitution.”); James E. Pfander, Article I Tribunals, Article III Courts, and the Judicial Power of the United States, 118 Harv, L.Rev. 643, 678 (2004) (“The notion that the category of Article I tribunals includes Article III federal courts as well as other federal adjudicatory bodies may help to explain the many instances of synonymous usage that might otherwise threaten the plausibility of the proposed distinction.”).
Thus we must examine our inherent constitutional power to administer equitable remedies. See U.S. Const. Art. Ill, § 2, cl. 1 (“The judicial power extends to all cases, in law and equity”); American Ins. Co. v. 356 Bales of Cotton, 26 U.S. 511, 512,1 Pet. 511, 7 L.Ed. 242 (1828) (finding that judicial power extends “to all cases in law and equity, arising under the Constitution” and the “laws of the United States”); see also Chambers v. NASCO, Inc., 501 U.S. 32, 47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (“ ‘[W]e do not lightly assume that Congress has intended to depart from established principles’ such as the scope of a court’s inherent power.” (quoting Wein-berger v. Romero-Barcelo, 456 U.S. 305, 313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982))); Califano v. Yamasaki, 442 U.S. 682, 705, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) (“Absent the clearest command to the contrary from Congress, federal courts retain their equitable power ... ”).
The ability of a court to right a demonstrated wrong is intrinsic to the basic concept of equitable powers:
It is universally recognized that equity will not suffer a wrong without a remedy. This maxim is derived, Professor Pomeroy informs us, from the more comprehensive legal maxim that wherever a legal right has been infringed a remedy will be given. The equitable maxim is the source of the entire equitable jurisdiction, whether it be exclusive, concurrent or auxiliary. See 2 Pomeroy Equity Jurisprudence (5th ed., Symons), § 423.
Cona v. Gower, 89 NJ.Super. 510, 215 A.2d 575, 579 (N.J. Super Ct. Ch. Div. 1965) (Matthews, J.S.C.). Those powers include the fashioning of remedies based on equitable maxims, such as “[ejquity aids the vigilant,” Ferguson v. Shinseki, No. 13-1149, 2014 WL 463690 (Vet.App. Feb. 6, 2014) (Greenberg, J., concurring) (citing John Norton Pomeroy, Pomeroy’s Equity Jurisprudence and Equitable Remedies § 418 (4th ed. 1918)), or “[ejquity is equality,” Monmouth Lumber Co. v. Indemnity Ins. Co. of North America, 21 N.J. 439, 451, 122 A.2d 604 (1956) (Vanderbilt, C.J.) (stating in a matter among creditors that, “[wjhile it is true that in ordinary circumstances equity follows the law and will not divest rights that have been legally acquired, that doctrine must yield if extraordinary circumstances or ‘countervailing equities’ call for relief.... [Tjhe doctrine of equality of treatment is applied where justice requires it[.j”) (internal citations omitted).
“Equitable remedies are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use,” Sears, Roebuck & Co. v. Camp, 124 N.J.Eq. 403, 411, 1 A.2d 425 (E. & A.1938) (Heher, J.), and one such remedy for potential application here, as noted by the dissent, is equitable estoppel, see Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), reh’g denied, 497 U.S. 1046, 111 S.Ct 5, 111 L.Ed.2d 821 (1990) (noting that the holding does not preclude an estoppel claim against the Government in every situation). A claimant in the appel *215 lant’s position here could obtain an equitable remedy, such as estoppel, injunction, or some other remedy, with a sufficient presentation to the Court that such a remedy was warranted on the existing facts. See Sneed v. Shinseki, 737 F.3d 719, 726, 728 (Fed.Cir.2013) (finding that “courts acting in equity have emphasized the ‘need for flexibility1 and ‘for avoiding mechanical rules,’ and have proceeded on a ‘case by case basis’ ”) (quoting Holland v. Florida, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010)).
I conclude that this appellant has not made that presentation. See Hilkert v. West, 12 Vet.App. 145, 151 (1999) (en banc) (“An appellant bears the burden of persuasion on appeals to this Court.”), aff'd per curiam, 232 F.3d 908 (Fed.Cir.2000) (table). No equitable remedy is warranted here without the appellant at least providing this Court some evidence that (1) the veteran’s death was the result of VA’s negligence; and (2) the veteran would have lived long enough for the appellant to satisfy the one-year requirement of 38 U.S.C. § 1304 but for VA’s negligence. Significantly, the appellant did not present this Court with a proffer of proof, beyond bare assertions, establishing those propositions. The appellant did not show, or specifically argue, that VA’s duty to assist, 38 U.S.C. § 5103A, is so unlimited as to compel the Secretary to develop evidence for the sole purpose of obtaining an equitable remedy from this Court for the appellant.
In the absence of the necessary showing that an equitable remedy is warranted, the statute controls.[8]

. In Conroy, the Supreme Court considered a section of the Soldiers’ and Sailors' Civil Relief Act of 1940 that stated that "[t]he period of military service shall not be included in computing any period ... for the bringing of any action or proceeding ... by or against any person in military service[.]” U.S.C.App, § 525 (now 50 U.S.C.App, § 526). The Supreme Court found there, as we do here with regard to section 1304, that the statute did not contain any qualifications to its unambiguous command, and that if Congress intended additional conditions, it would have written them into the statute. Conroy, 507 U.S. at 515, 113 S.Ct. 1562 (finding that the inclusion of a prejudice requirement in other sections of the statute meant that congressional omission of that requirement in § 525 was deliberate).

. Congress has changed the marriage requirement for surviving spouse benefits several times. Benefits were once based on service in specific wars or armed conflicts. For example, a widow of a World War I veteran would qualify for pension if she had married the veteran prior to December 13, 1944, or if the marriage occurred after that date but lasted 10 years prior to the veteran’s death. See Letter of H.V. Higley, Administrator of the Veterans Administration, to the House Committee on Veterans’ Affairs, May 19, 1957. Beginning in 1957, a widow qualified for pension benefits if she had been married to a veteran for five years. "An Act [t]o liberalize certain criteria for determining eligibility of widows for benefits,” Pub.L. No. 85-209, 71 Stat. 485 (1957). That requirement was reduced to one year in 1967. Pub.L. 90-77, 81 Stat. 178 (1967).
The parties here have used this history to offer competing views of legislative intent independent from the statute's plain language. Observing these positions, I note Justice Sca-lia’s concurrence in Conroy, in which he stated that the application of legislative history in that case was "not merely a waste of research time and ink; it is a false and disruptive lesson in the law.” 507 U.S. at 519, 113 S.Ct. 1562. I also note the Conroy majority’s competing view that "a jurisprudence that confines a court's inquiry to the ‘law as it is passed,’ and is wholly unconcerned about ‘the intentions of legislators,’ would enforce an unambiguous statutory text even when it produces manifestly unintended and profoundly unwise consequences.” Id. at 518, n. 12, 113 S.Ct. 1562 (internal citations omitted). I conclude that Congress repeatedly liberalized the marriage requirement but declined each opportunity to introduce exceptions to the standard Congress imposed.

. I note that if the appellant obtains, and proffers, appropriate evidence, she may present it to the Court in a petition for extraordinary relief premised upon equity.