Newman, Circuit Judge, dissenting.
Mr. Robinson, a veteran of the war in Vietnam, experienced heart problems including a heart attack in 2003. By regulation adopted in August 2010, coronary and other diseases were deemed service-connected for veterans who, like Mr. Robinson, had been exposed to Agent Orange in Vietnam:
38 C.F.R. § 3.309(e) (Disease associated with exposure to certain herbicide agents)
If a veteran was exposed to an herbicide agent during active military, naval, *1359 or air service, the following diseases shall be service-connected .... Ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction ; atherosclerotic cardiovascular disease including coronary artery disease (including coronary spasm ) and coronary bypass surgery ....
Mr. Robinson then sought the statutory compensation for his cardiac condition.
After various proceedings not here relevant, the VA assigned Mr. Robinson an initial effective date of January 26, 2003, the date of Mr. Robinson's heart attack, with 100 percent disability rating for the period between January 26, 2003 and May 1, 2003. The VA then assigned a 10 percent disability rating between May 1, 2003 and April 1, 2007, followed by a 60 percent disability rating starting on April 2, 2007, the date of a cardiac test that a VA cardiologist had first ordered 14 months earlier. The issue on appeal is the start date of the 60 percent rating, in view of the 14-month test delay.
Mr. Robinson states that he should not be prejudiced by the VA's inordinate delay in performing this test, and that the effective date of the 60 percent rating should be the date the test was first ordered, or a reasonable period thereafter. The Secretary responds that the regulation requires that the rating runs from the date the test was performed, and offers no explanation for the 14-month delay. The regulation states:
38 C.F.R. § 3.400(o)(2). (Disability compensation)
Earliest date as of which it is factually ascertainable based on all evidence of record that an increase in disability had occurred if a complete claim or intent to file a claim is received within 1 year from such date, otherwise, date of receipt of claim. When medical records indicate an increase in a disability, receipt of such medical records may be used to establish effective date(s) for retroactive benefits based on facts found of an increase in a disability only if a complete claim or intent to file a claim for an increase is received within 1 year of the date of the report of examination, hospitalization, or medical treatment. The provisions of this paragraph apply only when such reports relate to examination or treatment of a disability for which service-connection has previously been established.
My colleagues hold that Mr. Robinson's increase in compensation should be limited to the date of testing, because there is no evidence of the extent of disability during the 14-month period of delay in testing.
The court and the VA have incorrectly constricted the regulation, beyond its purpose and beyond the intent of the veterans' statutes. Mr. Robinson's cardiac health history and the results of this belated medical test demonstrate cardiac illness of several years, in ready conformity with the VA's statutory obligation to assign the earliest ascertainable effective date. From my colleagues' contrary ruling, I respectfully dissent.
DISCUSSION
The VA is required to determine the effective date of compensation "in accordance with the facts found." 38 U.S.C. § 5110(a). The effective date "shall be the earliest date as of which it is ascertainable that an increase in disability had occurred," id. § 5110(b)(3). The regulation, cited ante, refers to "medical records," but does not erase the obligation to present a reasonable analysis of the veteran's disability.
The Court of Veterans Appeals has considered 38 U.S.C. § 5110(b)(3) and 38 C.F.R. § 3.400(o)(2), Swain v. McDonald , 27 Vet.App. 219 (2015), and held that the effective date is, by statute, the "earliest"
*1360 date the disability is "ascertainable," not the date a particular test was administered:
[T]he Secretary's contention that § 4.85(a) requires the effective date for an increased disability claim to be set in accordance with the date a Maryland CNC test is administered not only adds words to the regulation that are not there, but it also conflicts with the plain meaning of section 5110(b)(3), which requires the effective date of an award of increased compensation to be 'the earliest date as of which it is ascertainable that an increase in disability had occurred.'
Id. at 224 (emphasis in original); see also id . ("Therefore, the effective date for an increased rating, indeed, as well as for an initial rating or for staged ratings, is predicated on when the increase in the level of hearing loss can be ascertained.") (citing 38 U.S.C. § 5110 and 38 C.F.R. § 3.400 ). The present case reflects similar principles, for Mr. Robinson's heart attack is direct evidence of cardiac illness long before the 14-month delayed test of ejection fraction.
The panel majority disagrees with any relevance of 38 U.S.C. § 5110 and 38 C.F.R. § 3.400 because Mr. Robinson is a Nehmer class member whose effective date should be determined by 38 C.F.R. § 3.816(c). See Maj. Op. at 1356-57. Respectfully, the majority misunderstands the "effective date" determination that is the subject of this appeal. Mr. Robinson has not appealed the effective date of January 26, 2003, which is the date he sought treatment for a myocardial infarction. In the words of the Board, "[t]his effective date was awarded under the Nehmer case and 38 C.F.R. § 3.816(c)(2)." Bd. Op. at 7 (J.A.19). Instead, Mr. Robinson has appealed the effective date for an increase in compensation based on a 60 percent disability rating. See Robinson Br. at 4. Determining the effective date for such increase in compensation is governed by 38 U.S.C. § 5110 and 38 C.F.R. § 3.400(o)(2). The applicability of this statute and regulation is undisputed. See Secretary Br. at 9 ("Broadly speaking, section 3.816(c) concerns the available effective date a veteran may be assigned under Nehmer .... This section, however, does not address the rating that must be assigned for the periods while service connection is in effect, nor does it govern the procedures to address a veteran's claim for increased compensation, which can be found at 38 U.S.C. § 5110 and 38 C.F.R. § 3.400(o)(2)."); Robinson Br. at 8 ("Once an award of benefits for a Nehmer -related condition is established and the original effective date is determined, 38 C.F.R. § 3.816(c) ceases to become applicable. If a staged rating is subsequently assigned, the effective date for any increased rating is subject to the provisions of 38 U.S.C. § 5110(b)(3) and 38 C.F.R. § 3.400(o)(2).") (emphasis omitted); Bd. Op. at 17 (J.A.29) (citing 38 U.S.C. § 5110(b)(2) and 38 C.F.R. § 3.400(o)(2) as providing "the proper effective date for increased rating claims"); Robinson v. Shulkin , No. 16-0427, 2017 WL 1046285, at *2 (Vet. App. Mar. 20, 2017) (citing 38 U.S.C. § 5110(a) as a basis to deny an earlier effective date for the 60 percent disability rating) (" Vet. Ct. Op.").
Section 3.816(c) sets forth the earliest effective date for disability compensation resulting from a covered herbicide disease. Its subsections (1-4) are directed to the timing of the claim and the earliest starting date for disability compensation. This regulation does not speak to determining the effective date for increased compensation resulting from a veteran's worsening covered herbicide disease once service connection under Nehmer is established. That is the role of § 3.400(o).
The panel majority argues that Mr. Robinson "had to rely on the special regulations *1361 applicable to Nehmer class members" and no other statutes or regulations are applicable. Maj. Op. at 1357. Yet no "special regulation" absolves the VA for the 14-month delay in testing Mr. Robinson. No "special regulation" mandates that the effective date is the date of testing and not the earliest ascertainable date that an increase has occurred. The panel majority's "special regulation," 38 C.F.R. § 3.816(c)(2), is silent on these issues. On the other hand, § 3.400(o) expressly addresses the effective date for an increase in disability compensation and defines it as the earliest ascertainable date. And it is this date-assigned by the Board pursuant to § 3.400(o) -that is the subject of this appeal.
Per the majority's interpretation of § 3.816(c)(2), Nehmer class veterans suffering from a covered herbicide disease, nearly all of which are chronic (see 38 U.S.C. § 1116 ), have no legal basis for an increase in compensation for a worsening condition. Such an interpretation is unconscionable, legally incorrect, and inconsistent with the majority's recognition that Mr. Robinson is entitled to an increase in compensation based on the test results.[1]
38 C.F.R. § 17.33(a)(2) imposes a duty on the VA to provide "prompt and appropriate treatment" to veterans:
(2) Patients have a right to receive, to the extent of eligibility therefor under the law, prompt and appropriate treatment for any physical or emotional disability.
When the VA fails in the duty of promptness, the consequences of such failure cannot be imposed on the veteran. To summarize: Mr. Robinson consulted a VA cardiologist on February 23, 2006, and the cardiologist ordered certain tests. The tests were not performed. Mr. Robinson again consulted the VA cardiologist on November 27, 2006, and the tests were again ordered. The tests were performed on April 2, 2007, showing an ejection fraction of 44%. The VA measured the 60% disability rating from the date of this test:
38 C.F.R. § 4.104 [Rating of 60%]: More than one episode of acute congestive heart failure in the past year, or; workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent.
The BVA stated that "[t]he treatment records do not demonstrate that [Mr. Robinson] met the criteria for a 60 percent rating for coronary artery disease ... until ... testing was accomplished on April 2, 2007." J.A.30. The Veterans Court affirmed, stating that Mr. Robinson "does not demonstrate clear error in the Board's decision because he does not identify any medical record prior to the April 2007 testing that would support a 60% disability rating." Vet. Ct. Op. at *2. Mr. Robinson states that he should not be penalized for the VA's 14-month delay in providing the ordered tests.
The BVA, the Veterans Court, and now my colleagues, ignore the requirement of measuring disability compensation from the earliest ascertainable date based on all the evidence. The record includes the earlier heart attack showing an existing cardiac condition and the consultations with the VA cardiologist. The panel majority states that "we do not know whether Mr. Robinson would have satisfied the requirements *1362 for the 60 percent disability rating had he received the testing at an earlier date." Maj. Op. at 1358. However, the entirety of the record must be considered and reasonably evaluated based on sound medical opinion. It is incorrect for the VA to automatically resolve any gap in evaluation against Mr. Robinson; this court has observed that a condition may have existed before it was verified. See Collins v. Shinseki , 310 F. App'x 393, 395 (Fed. Cir. 2009) ("it may be logical to assume that the date of an injury precedes the date it is verified by a physician").
Mr. Robinson states that if the VA is authorized to measure disability only from the date of a specific test, despite sound evidence that the disability existed, then the VA must conduct the test in a timely manner. Reply Br. at 2-3. The Secretary does not argue that the 14 months' delay is reasonable; the Secretary's only response is that Mr. Robinson could have gone to a private physician for the test. Secretary Br. at 20 ("Mr. Robinson was at liberty to obtain documentation of the status of his condition on his own prior to April 2007 ....") The record does not show that Mr. Robinson was so advised when the VA cardiologist ordered the VA to conduct the test.
38 U.S.C. § 5110 requires that the earliest ascertainable effective date must be applied. The Veterans Court has recently so recognized. See Cary v. Shulkin , No. 16-3181, 2017 WL 5496167, at *6 (Vet. App. Nov. 16, 2017) :
After concluding that Mr. Cary had sufficient symptoms to warrant the 70 percent rating as of June 17, 2011, the Board failed to take the next, necessary, step to examine the record to determine whether the increase in symptomology was "ascertainable" before this.
It is error to mechanically limit the effective date for a disability rating to the date of performance of a specific test related to that disability. See id . ; see also Blanchard v. McDonald , No. 15-4290, 2016 WL 7473954, at *2 (Vet. App. Dec. 29, 2016) (observing that a retrospective medical opinion may be necessary and helpful); Thomas v.McDonald , No. 15-3619, 2016 WL 6273232, at *3 (Vet. App. Oct. 27, 2016) ; Pludeman v. McDonald , No. 13-2408, 2015 WL 369963, at *4 (Vet. App. Jan. 28, 2015).
Mr. Robinson's situation is not of the unknown existence of a disability until basic diagnostic tests were conducted. His coronary illness had been manifested for years; the only new event was the regulatory presumption of service-connection based on herbicide exposure. With presumptive service connection, and clear manifestation of coronary illness, it is incorrect to ignore the entirety of the medical record, and limit the effective date of compensation to the date a specific symptom was measured. See Thomas , 2016 WL 6273232, at *3 (a retrospective medical opinion may be helpful).
To the extent that 38 C.F.R. §§ 3.400(o)(2) and 4.104 are applied to negate the statutory purpose, they are invalid. "The VA is charged with the responsibility of assisting veterans in developing evidence that supports their claims, and in evaluating that evidence, the VA must give the veteran the benefit of any doubt." Henderson v. Shinseki , 562 U.S. 428, 440, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011). Although my colleagues do state concern with this unreasonable delay, Maj. Op. at 1358, they place the consequences of delay on the Veteran. The Secretary offers no explanation or excuse for the delay. Contrary to the VA's obligation to assist veterans, and to give veterans the benefit of the doubt, Mr. Robinson received neither.
"The government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans *1363 so entitled receive the benefits due to them." Barrett v. Nicholson , 466 F.3d 1038, 1044 (Fed. Cir. 2006). This principle is here contravened, for there is no fault attributed to Mr. Robinson. The statute and regulations have been incorrectly construed to tie disability compensation to the date a test is performed, no matter what other evidence exists. From my colleagues' endorsement of this flawed ruling, I respectfully dissent.

The panel majority writes that the Veterans Court "cannot invoke equity to expand the scope of its statutory authority." Maj. Op. at 1358. No statute, no constitutional requirement, excludes equity from the scope of the Court of Appeals for Veterans Claims. Here, equitable principles are sought not to "expand the scope" of the court's jurisdiction, but to implement the statute in accordance with its legislative purpose.